[No. AO23419. First Dist., Div. Five. Jan. 26, 1984.]

STEPHEN J. PANTOS, Plaintiff and Appellant, v.
CITY AND COUNTY OF SAN FRANCISCO et al.,
Defendants and Respondents.

**COUNSEL**

William M. Bennett, DeGoff & Sherman, Victoria J. DeGoff and Richard Sherman for Plaintiff and Appellant.

Thomas M. Meyer as Amicus Curiae on behalf of Plaintiff and Appellant.

George Agnost, City Attorney, and Philip S. Ward, Deputy City Attorney, for Defendants and Respondents.

**OPINION**

**LOW, P. J.**—In this case we hold that when the defendant-court completes the compilation of a master list of qualified jurors, whether on tape or in

other document form, the list by name and address is a judicial record subject to public inspection and copying. Neither the Public Records Act (Gov. Code, § 6250 et seq.)[1] nor other law requires defendant to publicly disclose to plaintiff information from a juror's questionnaire. That information is obtained under representations of confidentiality and is used by the court as working notes and data to determine juror competency, preliminary to compilation of the master jury list.

Plaintiff Stephen J. Pantos operates a commercial jury investigation service providing background information on prospective jurors to paying clients. He requested the Jury Commissioner of the Superior Court for the City and County of San Francisco to provide him with the "trial juror lists" along with the completed juror questionnaires which were used to select the master list of qualified jurors. Plaintiff's request was denied and he filed a complaint for declaratory relief asking the trial court to declare these to be "public records" pursuant to the Public Records Act (Act). The trial court found that the Act did not apply to the judiciary and thus to the jury commissioner and that plaintiff had not demonstrated sufficient reason to make these records available. Judgment was entered for defendants City and County of San Francisco et al., and plaintiff appeals, contending (1) the juror records are covered by the Act, and (2) the public interest in disclosure outweighs any interest in individual privacy.

The data contained in the questionnaire which plaintiff requested included: (1) prospective juror's ability to read, write and understand English; (2) age, birthdate and citizenship; (3) place of residence; (4) prior jury service; (5) prior felony convictions; (6) existence of pending criminal charges; and (7) occupation and name of employer. In past years before utilizing computers, the master list was disclosed to the public, but the questionnaires have "always been kept confidential by the court."

I.

The Act became law with the objective of encouraging access to information in possession of public agencies. It favors disclosure of information concerning the public's business. (*Los Angeles Police Dept.* v. *Superior Court* (1977) 65 Cal.App.3d 661, 668 [135 Cal.Rptr. 575].) Access to information concerning the conduct of the people's business is a fundamental right of every person. Where there is no contrary statute or public policy, the right to inspect public records must be freely allowed. The Act also seeks to protect rights of privacy by formulating an accommodation between competing constitutional rights.

---

[1]All section references are to the Government Code unless otherwise indicated.

Section 6253 requires all state and local agencies to make public records available during office hours. As defined by section 6252, a "[s]tate agency" means "every state office, officer, department, division . . . except those agencies provided for in Article IV . . . [the Legislature] or Article VI [the judiciary] of the California Constitution." Section 6260 states that the Act shall not affect the status of judicial records as public records or the rights of litigants to discovery.

■ In this appeal, plaintiff argues that jurors' identities must be disclosed, and cites in support of this position the case of *Lehman* v. *City and County of San Francisco* (1978) 80 Cal.App.3d 309 [145 Cal.Rptr. 493]. In *Lehman,* plaintiff, a prospective juror assigned to a civil trial, sued the City and County of San Francisco (a "local agency" as defined in § 6252) alleging violation of his state and federal rights of privacy after the jury commissioner informed parties to the litigation of plaintiff's identity as a prospective juror. In upholding the trial court's sustaining of a demurrer, the court held that disclosure of the identities of potential jurors without disclosure of other personal information was not a violation of the jurors' right of privacy. That court held that the juror's identity was a "public record." No confidentiality was violated. (*Id.,* at p. 312.)

■ The *Lehman* opinion does not discuss whether the judiciary is a "state agency" covered by the Act or if it is exempt as a constitutional agency under section 6252, subdivision (a). The unambiguous language of the statute speaks clearly on this point and it expressly exempts the state courts from the provisions of the Act. *Estate of Hearst* (1977) 67 Cal.App.3d 777, 782 [136 Cal.Rptr. 821] correctly ruled that the Act does not apply to the judiciary. ■ The jury commissioner is an executive officer appointed by the superior court and is a part of the judicial system of the state. (See *Adams* v. *Superior Court* (1974) 12 Cal.3d 55, 59 [115 Cal.Rptr. 247, 524 P.2d 375]; *Noel* v. *Lewis* (1917) 35 Cal.App. 658, 662-663 [170 P. 857].)

However, this does not mean that all official records prepared by the jury commissioner are exempt from disclosure. (See *Estate of Hearst, supra,* 67 Cal.App.3d at p. 782.) There can be no doubt that certain court records are public records. (*Ibid.*)

■ The master list of qualified jurors has the status of a judicial record, available to the public in general. There are no exemptions and no compelling reasons for nondisclosure. Courts do have the inherent power to control their own records to protect jurors' privacy, litigants' rights or to protect the public from injury. Nothing has been presented to justify nondisclosure. ■ The law favors maximum public access to judicial proceedings and

court records. (See *Press-Enterprise Company* v. *Superior Court* (1984) 501 U.S. 464 [78 L.Ed.2d 629, 104 S.Ct. 819.]; *Globe Newspaper Co.* v. *Superior Court* (1982) 457 U.S. 596, 604-605 [73 L.Ed.2d 248, 255-256, 102 S.Ct. 2613].) Judicial records are historically and presumptively open to the public and there is an important right of access which should not be closed except for compelling countervailing reasons. (See Code Civ. Proc., § 1904.) ■ No such reasons have been presented. Upon payment of reasonable costs, plaintiff is entitled to a copy of the master list of qualified jurors containing names and addresses. The subsidiary "summons lists" utilized periodically to summon panels for jury service are also public documents subject to public inspection.

II.

■ Historically, the questionnaires completed by the prospective juror have not been disclosed to the public. Juror questionnaires are authorized under Code of Civil Procedure section 204.3 and are used to assist the jury commissioner to determine the qualifications of a citizen for possible inclusion on the master jury list. The jury commissioner represents to prospective jurors that all information provided is confidential. These questionnaires are not judicial records open to the public, but are informational sources gathered to determine qualification for prospective jury service. The jury commissioner may summon prospective jurors and require them to answer, under oath, inquiries touching on their name, age, residence, occupation and all matters concerning their qualifications for jury duty. Any information acquired by the court must be noted on the jury questionnaire. After the preliminary information, notes and data are reviewed, a determination of qualification for the master jury list is made. The completed master list then becomes a judicial document open to the public.

All records and papers compiled to make the selection for the master jury list must be preserved for at least three years (Code Civ. Proc., § 204.3, subd. (c)). The questionnaires may have possible use should there be criticism or challenge to the master jury list. In an appropriate legal proceeding or upon a valid policy declaration of the court in its inherent power to control its records, some or all of the information may be disclosed. However, there is no requirement of general disclosure of the questionnaire under the Act or under any other applicable law.

■ Plaintiff claims that access to the questionnaire will enhance the selection of a fair and impartial jury. Effective voir dire is a safeguard to a fair trial before an impartial jury. (See *People* v. *Williams* (1981) 29 Cal.3d

392, 405 [174 Cal.Rptr. 317, 628 P.2d 869]; *United States* v. *Brooklier* (9th Cir. 1982) 685 F.2d 1162, 1167.) Plaintiff has failed to demonstrate that the present method of questioning jurors, with broad discretion resting with the trial judge in each case, is inadequate or that the advanced knowledge of the contents of the questionnaires would significantly aid in the selection of an unbiased and objective panel of jurors. The litigants are entitled to a constitutionally "neutral jury," a jury which is "drawn from a pool which reasonably mirrors the diversity of experiences and relevant viewpoints of those persons in the community who can fairly and impartially try the case." (*Hovey* v. *Superior Court* (1980) 28 Cal.3d 1, 19-20 [168 Cal.Rptr. 128, 616 P.2d 1301].) This right is codified in Penal Code section 1078, which imposes a duty on the trial court to select a fair and impartial jury and vests the court with discretion to permit and limit the oral examination of jurors by counsel. (See also Code Civ. Proc., §§ 600-605.) ■

In *People* v. *Williams, supra,* 29 Cal.3d 392, the Supreme Court further expanded the scope of permissible searching interrogation of prospective jurors. Questions which will assist counsel in the intelligent exercise of peremptory challenges are allowed. (*Id.,* at pp. 404-405.) Where appropriate, such questions may include family history, previous dealings with the government, prior health problems, individual criminal records, racial attitudes (see *United States* v. *Barnes* (2d Cir. 1979) 604 F.2d 121, 136-137), and religious prejudice (see *United States* v. *Daily* (7th Cir. 1943) 139 F.2d 7, 9).

■ We note that the prospective juror is compelled by law to supply answers to the questionnaire and to provide other information to the jury commissioner touching on his or her qualifications. (Code Civ. Proc., § 204.3.) The jury questionnaire here involved states that "[t]his *questionnaire is confidential. It is for the exclusive use of the Superior Court of San Francisco,*" and "these questions are for court use only and *will not be made public.*" (Italics added.) To disclose this information under these conditions may negatively impact on the prospective juror's willingness to serve and thus interfere with efficient court administration. At first glance, the information plaintiff wants appears to be innocuous and is not the type of personal information normally recognized as warranting protection from disclosure. (See, e.g., *White* v. *Davis* (1975) 13 Cal.3d 757 [120 Cal.Rptr. 94, 533 P.2d 222] [students' political views]; *Porten* v. *University of San Francisco* (1976) 64 Cal.App.3d 825 [134 Cal.Rptr. 839] [student's academic record]; *Valley Bank of Nevada* v. *Superior Court* (1975) 15 Cal.3d 652 [125 Cal.Rptr. 553, 542 P.2d 977] [individual's bank records].) However, it cannot be said that this information would normally be volunteered by many persons without the promise of confidentiality duly honored by the court. It requires little imagination to conceive of a situation where a company armed with a juror's answers to the questionnaire proceeds to inter-

rogate neighbors and business associates about private matters unrelated to jury service. In this informational age, commercial misuse of this stored data has potential for unintended harm to which the judiciary may not wish to contribute. There is a risk of unreasonable intrusion into the juror's privacy by extensive dissemination of the questionnaire answers with the ubiquitous availability of integrated computer information circulating freely. Importantly, the court does not have the power to contain the extent to which this data may be used to yield information about a juror's life. Public interest in withholding such questionnaires outweighs the public's interest in disclosure.[2] We find little if any benefit that the advanced disclosure of this information would add to the extensive and probing voir dire. Such disclosure would breach a juror's reasonable expectation of privacy and would undercut efforts to encourage citizen participation in the justice system. (See *United States* v. *Barnes, supra,* 604 F.2d at p. 140.)

The judgment, except as modified to allow disclosure of the master qualified jury list and panels thereof, is affirmed.

King, J., and Haning, J., concurred.

Petitions for a rehearing were denied February 16 and February 21, 1984, and the petitions of all parties for a hearing by the Supreme Court were denied April 4, 1984. Bird, C. J., was of the opinion that the petitions should be granted.

---

[2]This information is comparable to personal information, the disclosure of which would be an unwarranted invasion of personal privacy and similar to information received in confidence which if disclosed injures an important governmental function. (See § 6254.)