Filed 12/30/20 (unmodified opn. attached)

**CERTIFIED FOR PARTIAL PUBLICATION**[*]

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FIRST APPELLATE DISTRICT

DIVISION FIVE

| | |
|---|---|
| EDENILSON MISAEL ALFARO,<br><br>      Petitioner,<br><br>v.<br><br>THE SUPERIOR COURT OF MARIN COUNTY,<br><br>      Respondent;<br><br>THE PEOPLE et al.,<br><br>      Real Parties in Interest. | A159577<br><br>**ORDER MODIFYING OPINION AND DENYING REHEARING [NO CHANGE IN JUDGMENT]**<br><br>(Marin County<br>Super. Ct. No. SC197429E) |

**BY THE COURT:**

It is ordered that the opinion filed herein on December 9, 2020, be modified as follows:

(1) In the third sentence of footnote 10 on page 12, replace "the County's master list" with "the master list".

(2) In item (2) of the disposition on page 28, replace "enter a new order granting Defendant's renewed discovery motion as to the master and qualified jury lists," with "enter a new order granting Defendant's renewed

---

[*] Pursuant to California Rules of Court, rules 8.1105(b) and 8.1110, this opinion is certified for publication with the exception of part II & IV.

discovery motion as to the requested information on the master and qualified jury lists, to wit, the names and zip codes appearing on those lists,".

There is no change in the judgment.

Appellant's petition for rehearing is denied.

Dated:     12/30/2020                          SIMONS, J.       , Acting P.J.

Superior Court of Marin County, No. SC197429E, Hon. Andrew E. Sweet, Judge.

Law Office of Michael N. Burt and Michael N. Burt; Law Office of John T. Philipsborn and John T. Philipsborn, for Petitioner.

Sanger Swysen & Dunkle, Stephen Kerr Dunkle, for California Attorneys for Criminal Justice, Amicus Curiae in support of Petitioner.

Xavier Becerra, Attorney General, Lance E. Winters, Chief Assistant Attorney General, Jeffrey M. Laurence, Senior Assistant Attorney General, Alice B. Lustre and Sarah J. Farhat, Deputy Attorneys General, for Real Party in Interest the People.

Cummings, McClorey, Davis, Acho & Associates, Sarah L. Overton, for Real Party in Interest James M. Kim.

No appearance for Respondent Superior Court.

Filed 12/9/20 (unmodified opinion)
# CERTIFIED FOR PARTIAL PUBLICATION*

## IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## FIRST APPELLATE DISTRICT

## DIVISION FIVE

| | |
|---|---|
| EDENILSON MISAEL ALFARO,<br><br>        Petitioner,<br><br>v.<br><br>THE SUPERIOR COURT OF MARIN COUNTY,<br><br>        Respondent;<br><br>THE PEOPLE et al.,<br><br>        Real Parties in Interest. | A159577<br><br>(Marin County<br>Super. Ct. No. SC197429E) |

Petitioner Edenilson Misael Alfaro (Defendant), a defendant in a capital murder case filed in Marin County (the County), sought discovery in connection with his claim that juries in the County were not selected from a fair cross-section of the community. The records he sought included the County's master list of prospective jurors. Defendant relied on *Pantos v. City and County of San Francisco* (1984) 151 Cal.App.3d 258 (*Pantos*), which held a court's "master list of qualified jurors . . . is a judicial record subject to public inspection and copying." (*Id.* at pp. 260–261.) The trial court denied the request, finding that *Pantos* was no longer good law in light of

---

* Pursuant to California Rules of Court, rules 8.1105(b) and 8.1110, this opinion is certified for publication with the exception of parts II and IV.

1

subsequent statutory developments, and that Defendant failed to make the showing required for discovery related to a fair cross-section challenge.

We consider subsequent statutory developments and countervailing privacy interests, and conclude *Pantos* is still good law, at least as to the names and zip codes appearing on master jury lists. Accordingly, we will issue a writ directing the trial court to reverse its order denying Defendant's request for these records.

## LEGAL BACKGROUND

A. *Procedure for Compiling Lists of Prospective Jurors*

Jury selection in California is governed by the Trial Jury Selection and Management Act (hereafter, the Act; Code Civ. Proc. § 190 et seq.).[1] Each county has a jury commissioner "responsible for managing the jury system under the general supervision of the court in conformance with the purpose and scope of [the Act]." (§ 195, subds. (a) & (c).)

Jurors "shall be selected at random, from a source or sources inclusive of a representative cross section of the population of the area served by the court." (§ 197, subd. (a).) "The list of registered voters and the Department of Motor Vehicles' list of licensed drivers and identification cardholders resident within the area served by the court, are appropriate source lists for selection of jurors. These two source lists, when substantially purged of duplicate names, shall be considered inclusive of a representative cross section of the population . . . ." (§ 197, subd. (b).)[2] "The jury commissioner

---

[1] All undesignated section references are to the Code of Civil Procedure.

[2] Section 197 was recently amended, effective January 1, 2021, to require the Franchise Tax Board to furnish county jury commissioners with "a list of resident state tax filers for their county" and, beginning January 1, 2022, "the list of resident state tax filers, the list of registered voters, and the

2

shall, at least once in each 12-month period, randomly select names of prospective trial jurors from the source list or lists, to create a master list." (§ 198, subd. (b).) "The master jury list shall be used by the jury commissioner, as provided by statute and state and local court rules, for the purpose of (1) mailing juror questionnaires and subsequent creation of a qualified juror list, and (2) summoning prospective jurors to respond or appear for qualification and service." (§ 198, subd. (c).)

Marin County Local Rules, rule 8.17 sets forth jury selection procedures for the County. A list of jurors is generated from "the list of registered voters and the Department of Motor Vehicle's list of licensed drivers and identification card holders. [¶] These two source lists are combined for use in the computer; using predetermined matching criteria, the computer then compares the names on the two lists and eliminates any duplicates which results in a single merged file list." (*Id.*, subd. (B).) "After the source lists are combined, duplicates eliminated, and disqualified individuals purged, as set forth in this rule, a master list will be produced by using the complete randomization technique and shall be generated at least once each year." (*Id.*, subd. (B)(3).)

B.    *Fair Cross-Section Challenge*

"A criminal defendant has a 'right, under the Sixth and Fourteenth Amendments, to a petit jury selected from a fair cross section of the community.' [Citations.] 'In order to establish a prima facie violation of the fair-cross-section requirement, the defendant must show (1) that the group

Department of Motor Vehicles' list of licensed drivers and identification cardholders resident within the area served by the court, when substantially purged of duplicate names, shall be considered inclusive of a representative cross section of the population . . . ." (Stats. 2020, ch. 230, § 1 [eff. Jan. 1, 2021].)

alleged to be excluded is a "distinctive" group in the community; (2) that the representation of this group in venires from which juries are selected is not fair and reasonable in relation to the number of such persons in the community; and (3) that this underrepresentation is due to systematic exclusion of the group in the jury-selection process.' " (*People v. Henriquez* (2017) 4 Cal.5th 1, 18–19.)

Whether a defendant is entitled to "the discovery of information necessary to make such a case" requires a different analysis. (*People v. Jackson* (1996) 13 Cal.4th 1164, 1194 (*Jackson*).) "A defendant who seeks access to this information is obviously not required to justify that request by making a prima facie case of underrepresentation. Rather, upon a particularized showing supporting a reasonable belief that underrepresentation in the jury pool or the venire exists as the result of practices of systematic exclusion, the court must make a reasonable effort to accommodate the defendant's relevant requests for information designed to verify the existence of such underrepresentation and document its nature and extent." (*Id.* at p. 1194.) We consider below whether this particularized showing requirement applies to master jury lists, or whether such lists are disclosable as public records without the need for a particularized showing.

FACTUAL AND PROCEDURAL BACKGROUND

In June 2018, Defendant and a co-defendant were charged by information with murder and other crimes. The People filed a notice of intent to seek the death penalty against Defendant.

Defendant filed a motion for discovery seeking, for purposes of pursuing a fair cross-section challenge, "the master jury wheel," "the qualified jury wheel," and "the actual computer program, operation manual and/or other documentation describing the method by which the voter record information

4

list and the driver record information list is merged and purged of duplicate names."[3]  Like the parties, we hereafter refer to records sought by the last request as the "merge/purge information."  Defendant also requested permission to conduct an anonymous survey of prospective jurors in the jury lounge to obtain their self-identification as to "race/ethnicity and gender."  Defendant then served a subpoena duces tecum on the County's jury commissioner (the Jury Commissioner) seeking the same information, and the Jury Commissioner moved to quash the subpoena.[4]

As to the master and qualified jury lists, Defendant argued these were public documents for which no particularized showing was required, citing, *inter alia, Pantos, supra,* 151 Cal.App.3d 258, and further argued any concerns about information such as home addresses or driver's license numbers could be resolved through redactions or a protective order.  The Jury Commissioner argued the master and qualified lists were not public records, citing prospective jurors' right to privacy and various statutes, enacted after *Pantos,* prohibiting the disclosure of certain information.  As to the merge/purge information and jury survey, the parties disputed whether Defendant had established the requisite particularized showing.  The trial court granted the Jury Commissioner's motion to quash, finding statutes enacted after *Pantos* constituted a compelling reason for withholding disclosure of the master list, Defendant was therefore required to make a

---

[3] Additional discovery sought by Defendant is not relevant to this writ proceeding.

[4] Defendant's counsel later explained that, following conversations with counsel for the Jury Commissioner, "we agreed, to short-circuit this litigation, I would issue a subpoena without conceding that was required . . . ."

"particularized showing" before receiving any of the requested records, and Defendant had failed to do so.[5]

Defendant subsequently filed a motion seeking to prohibit trial under the County's current jury selection system because it would violate his right to a jury selected from a fair cross-section of the community.[6] The motion further argued the trial court's denial of Defendant's discovery motion deprived him of the ability to adequately present this challenge. The Jury Commissioner opposed the motion.

Dr. John Weeks, qualified by the court as an expert in demography as it applies to jury composition challenges, testified at the evidentiary hearing on Defendant's motion, and a declaration Weeks prepared was received into evidence. Weeks used United States Census Bureau data to determine the "jury eligible population" of the County; i.e., County residents who were citizens, 18 years or older, and spoke English. His analysis determined that 7.9 percent of the jury eligible population of the County is Hispanic. He then analyzed approximately 1,800 prospective jurors in a 2013 County case (including prospective jurors in the jury pool and those summoned but excused for hardship). Because Weeks did not have data from the County about the race or ethnicity of its prospective jurors,[7] he analyzed the

---

[5] Defendant separately served a subpoena duces tecum on Jury Services, Inc. (JSI), previously identified by the Jury Commissioner as "the company who manages the Court's computer program." Defendant's subpoena sought, among other records, the merge/purge information. JSI filed a motion to quash, which the trial court granted on the ground that Defendant failed to make the requisite particularized showing.

[6] Other aspects of the motion are not relevant here.

[7] Although Defendant had received some informal discovery from the Jury Commissioner, including annual reports to the Judicial Council and a blank

6

surnames of the prospective jurors and determined that approximately 5.2 percent were Hispanic. He thus opined there was a 2.7 percent absolute disparity, and a 34 percent relative disparity, between jury-eligible County residents who were Hispanic and prospective jurors who were Hispanic. Weeks identified several possible reasons for the disparity, including problems with the merge/purge process. However, he clarified that he could not determine with certainty the cause of the disparity without additional information.

During the evidentiary hearing, Defendant renewed his discovery request with respect to the master and qualified lists, the merge/purge information, and the jury survey. The parties reiterated their arguments about whether the master list is a public record. The trial court denied the renewed motion and denied the fair cross-section challenge.

Following the court's ruling, Defendant sought writ relief in this court. We issued an order to show cause, and the People and the Jury Commissioner filed returns.[8] California Attorneys for Criminal Justice filed an amicus brief on behalf of Defendant.

---

juror summons, the produced records contained no data about the demographic characteristics of prospective jurors. The Jury Commissioner testified at the evidentiary hearing that the County does not keep demographic statistics on prospective jurors.

[8] Defendant urges us to strike the People's return because it is unverified. "[A] return of an alternative writ may be made 'by demurrer, verified answer or both.' (Code Civ. Proc., § 1089.)" (*Ashmus v. Superior Court* (2019) 42 Cal.App.5th 1120, 1124, fn. 4.) Defendant points to authority that an "unverified return which is not a demurrer should be stricken in terms of the merits of the mandate petition." (*Universal City Studios, Inc. v. Superior Court* (2003) 110 Cal.App.4th 1273, 1287.) Defendant does not address whether the verification requirement applies to public entities such as the People. (Compare *Verzi v. Superior Court* (1986) 183 Cal.App.3d 382, 385

DISCUSSION

I.    *Propriety of Writ Review*

Defendant seeks a writ directing the trial court to reverse its order denying Defendant's renewed discovery motion and to reopen Defendant's fair cross-section challenge for consideration of the new discovery.  Our order to show cause reflects our determination that writ review is appropriate as to this request.  (*Pacific etc. Conference of United Methodist Church v. Superior Court* (1978) 82 Cal.App.3d 72, 80.)  Among other reasons for our intervention, we observe that while " '[w]rit proceedings are not the favored method for reviewing discovery orders' " (*Perlan Therapeutics, Inc. v. Superior Court* (2009) 178 Cal.App.4th 1333, 1342), "[m]andamus is appropriate to address discovery issues that present novel issues of first impression and general importance."  (*Maldonado v. Superior Court* (2012) 53 Cal.4th 1112, 1124; accord, *Oceanside Union School District v. Superior Court* (1962) 58 Cal.2d 180, 186, fn. 4 ["[T]he prerogative writs should only be used in discovery matters to review questions of first impression that are of general importance to the trial courts and to the profession, and where general guidelines can be laid down for future cases."].)  The question presented here—whether *Pantos's* holding that master jury lists are

_____

[verification not required]; with *People v. Superior Court (Alvarado)* (1989) 207 Cal.App.3d 464, 469–470 [verification required].)  We need not decide the issue because, as Defendant concedes, courts have at times treated unverified returns " 'as a return by demurrer, because a demurrer admits the facts pleaded in a writ petition,' " where, as here, "the brief was 'essentially a memorandum of points and authorities in support of a demurrer' to the petition for writ of mandate."  (*Ashmus*, at p. 1124, fn. 4.)  We so construe the People's return.  We note that, other than arguing that writ review is improper, the People simply join in the Jury Commissioner's arguments.

8

disclosable public records remains good law despite subsequent statutory developments—is such an issue. Accordingly, writ review is appropriate.

Defendant's petition also seeks writ review with respect to other rulings: (1) certain evidentiary rulings made at the hearing on Defendant's fair cross-section challenge, and (2) the trial court's order, issued more than 60 days before Defendant's writ petition was filed, granting JSI's motion to quash Defendant's subpoena. As our order to show cause explained, writ review as to these rulings is not appropriate. (*People v. Municipal Court (Ahnemann)* (1974) 12 Cal.3d 658, 660 ["It is well settled that neither a writ of prohibition nor a writ of mandate will lie to resolve an issue as to the admissibility of evidence."]; *Volkswagen of America, Inc. v. Superior Court* (2001) 94 Cal.App.4th 695, 701 [" 'An appellate court may consider a petition for an extraordinary writ at any time [citation], but has discretion to deny a petition filed after the 60-day period applicable to appeals, and should do so absent "extraordinary circumstances" justifying the delay.' "].)[9] Accordingly, we will deny the petition as to these issues.

II.     *Procedural Arguments*

The Jury Commissioner asserts various procedural arguments. The arguments are unavailing.

---

[9] As for JSI, our order to show cause determined "the petition is untimely as to this entity. As JSI was not a participant in the proceedings that led to the ruling on petitioner's renewed discovery motion, the court finds it inappropriate to extend the time period for seeking writ relief as to JSI. Additionally, petitioner does not demonstrate he lacks another adequate remedy at law by issuing another subpoena to JSI in the event the underlying petition is granted as to discovery motion requests (4) and (5) directed to real party Court Executive Officer/Jury Commissioner, since the materials sought from JSI were similar to those requests."

For the first time in his return, the Jury Commissioner claims Defendant's renewed discovery motion was not properly before the trial court because "the trial court did not hear petitioner's discovery motion in the first instance, only the motion to quash," and because Defendant cannot move for discovery from the Jury Commissioner, a nonparty to the criminal proceedings. In the trial court, the Jury Commissioner opposed Defendant's renewed discovery motion on the merits and incorporated arguments made in the motion to quash briefing. In this court, the Jury Commissioner's informal response characterized the renewed discovery motion as a reprise of the motion to quash proceedings, referring to "defendant's renewed discovery motion (i.e. the motion to quash the defense subpoena)." Defendant could have easily cured any error below. Accordingly, the Jury Commissioner has forfeited this procedural objection. (*NBCUniversal Media, LLC v. Superior Court* (2014) 225 Cal.App.4th 1222, 1236–1237 ["[Real parties in interest] concede they did not raise this issue in their opposition to the motion for summary judgment. Nor did they raise it in their preliminary response. . . . Thus, [they] have forfeited this argument."].)

We also reject the Jury Commissioner's argument that Defendant may not raise certain issues which were raised during the motion to quash proceedings but were, according to the Jury Commissioner, insufficiently reraised during the renewed discovery proceedings. First, the Jury Commissioner contends Defendant is precluded from seeking the qualified jury list because "no specific request was made" during the renewed discovery proceedings, even though, as the Jury Commissioner concedes, Defendant's counsel referred to the qualified list during argument. Given that Defendant sought the qualified list during the previous discovery proceedings, counsel's reference to the list during argument was sufficient to include it in his

10

renewed discovery motion. Second, the Jury Commissioner complains that, during the renewed discovery proceedings, Defendant did not restate that the master and qualified lists could be redacted or subject to a protective order. Dr. Weeks's declaration was clear that the information sought from the master and qualified lists was the jurors' last names and zip codes. The Jury Commissioner cites no authority that it was Defendant's burden to raise the possibility of redactions or a protective order. To the contrary, "[i]f a judicial administrative record contains information that is exempt from disclosure and the exempt portions are reasonably segregable, a judicial branch entity must allow inspection and copying of the record after deletion of the portions that are exempt from disclosure." (Cal. Rules of Court, rule 10.500(e)(1)(C).) Third, the Jury Commissioner contends Defendant is precluded from arguing that he is entitled to the master and qualified lists under the United States Constitution, the California Constitution, and the Act. We need not decide this issue because, as discussed *post,* we resolve the matter on other grounds.

Finally, we reject the Jury Commissioner's contention that, to the extent Defendant seeks review of the trial court's order granting the Jury Commissioner's motion to quash Defendant's subpoena, the petition is untimely. The petition seeks review of the trial court's order denying Defendant's renewed discovery motion, and is timely.

III.  *Master and Qualified Jury Lists*

We now turn to whether master and qualified jury lists are disclosable public records, or whether Defendant must satisfy the particularized showing requirement before obtaining them for purposes of his fair cross-section

11

challenge.[10]  Although in general discovery rulings are reviewed for abuse of discretion, where, as here, " ' "the propriety of a discovery order turns on . . . a question of law," we "determine the issue de novo." ' "  (*Jimenez v. Superior Court* (2019) 40 Cal.App.5th 824, 829.)

A.    *Presumption of Public Access to Judicial Records*

Although the California Public Records Act (Gov. Code, § 6250 et seq.) does not apply to judicial records (*Copley Press, Inc. v. Superior Court* (1992) 6 Cal.App.4th 106, 111), it is well-established, under constitutional principles and the common law, that such records are presumptively public.  "Both the federal (First Amendment to the United States Constitution) and the state (article I, section 2(a), California Constitution) Constitutions provide broad access rights to judicial hearings and records."  (*Copley Press v. Superior Court, supra,* at p. 111.)  "Records from judicial proceedings . . . are . . . subject to a public right of access . . . . as a continuation of the common law right to inspect and copy judicial records."  (*KNSD Channels 7/39 v. Superior Court* (1998) 63 Cal.App.4th 1200, 1203 (*KNSD*).)

"The common law right of access to judicial records is not absolute, but 'must be reconciled with legitimate countervailing public or private

---

[10] The parties do not define the terms "master list" and "qualified list" or explain the differences, if any, between the two.  Section 194 defines " 'Master list' " as "a list of names randomly selected from the source lists" and " 'Qualified juror list' " as a list of people who meet the statutory qualifications for jury service.  (§ 194, subds. (g), (j)–(k); see § 203 [listing qualifications].)  Marin County Local Rules, rule 8.17(B)(3) states the County's master list is produced after "disqualified individuals [are] purged," suggesting the master and qualified lists for the County may be the same.  (See also *Pantos, supra,* 151 Cal.App.3d at p. 260 [referring to "master list of qualified jurors"].)  In any event, no party suggests our analysis is any different as between these two lists, and we accordingly consider them together.

12

interests . . . .' [Citation.] However, the fundamental nature of the right gives rise to a 'presumption' in favor of public access." (*KNSD, supra,* 63 Cal.App.4th at p. 1203.) "California also recognizes the presumption of accessibility of judicial records in criminal cases and allows a trial court limited authority to preclude such access. '[W]here there is no contrary statute or countervailing public policy, the right to inspect public records must be freely allowed.' " (*Id.* at pp. 1203–1204; see also *Estate of Hearst* (1977) 67 Cal.App.3d 777, 783 ["[T]here can be no doubt that court records are public records, available to the public in general, including news reporters, unless a specific exception makes specific records non-public." (Fn. omitted)].)

This presumption of openness applies equally to jury selection. "[S]ince the development of trial by jury, the process of selection of jurors has presumptively been a public process with exceptions only for good cause shown." (*Press-Enterprise Co. v. Superior Court of California* (1984) 464 U.S. 501, 505 (*Press-Enterprise*).) For example, in determining whether "to close any portion of jury selection," courts apply the following standard: " 'The presumption of openness may be overcome only by an overriding interest based on findings that closure is essential to preserve higher values and is narrowly tailored to serve that interest. The interest is to be articulated along with findings specific enough that a reviewing court can determine whether the closure order was properly entered.' " (*Bellas v. Superior Court* (2000) 85 Cal.App.4th 636, 643 (*Bellas*); see also *id.* at p. 645 [applying standard to prospective juror questionnaires].)

13

In addition to constitutional principles and the common law, California Rules of Court, rule 10.500(e)(1)(A)[11] provides: "A judicial branch entity must allow inspection and copying of judicial administrative records unless the records are exempt from disclosure under this rule or by law."[12] By its own terms, the rule "clarifies and expands the public's right of access to judicial administrative records and must be broadly construed to further the public's right of access." (Rule 10.500(a)(2).)[13]

B.      Pantos *and Related Cases*

*Pantos* relied on the presumption of public access to judicial records in concluding that a court's "master list of qualified jurors" was a public judicial record: "The master list of qualified jurors has the status of a judicial record, available to the public in general. There are no exemptions and no

_____

[11] All undesignated rule references are to the California Rules of Court.

[12] Rule 10.500 was adopted pursuant to Government Code section 68106.2, subdivision (g), which requires the Judicial Council to adopt "rules of court that provide public access to nondeliberative or nonadjudicative court records, budget and management information." (See rule 10.500(a)(1) ["this rule . . . implement[s] Government Code section 68106.2(g)"].)

[13] Defendant also relies on a section of the California Constitution providing "the writings of public officials and agencies shall be open to public scrutiny" and "[a] statute, court rule, or other authority . . . shall be broadly construed if it furthers the people's right of access, and narrowly construed if it limits the right of access." (Cal. Const., art. I, § 3, subd. (b)(1)–(2).) However, the section also provides, "Nothing in this subdivision supersedes or modifies the right of privacy guaranteed by Section 1 or affects the construction of any statute, court rule, or other authority to the extent that it protects that right to privacy." (Cal. Const., art. I, § 3, subd. (b) (3).) As discussed *post* in part III.D, the Jury Commissioner relies on the constitutional privacy rights of prospective jurors. Because, as explained below, we resolve the issue without the need to invoke the constitutional public access provision, we need not explore the interaction between it and the constitutional privacy provision.

compelling reasons for nondisclosure. Courts do have the inherent power to control their own records to protect jurors' privacy, litigants' rights or to protect the public from injury. Nothing has been presented to justify nondisclosure. The law favors maximum public access to judicial proceedings and court records. [Citations.] Judicial records are historically and presumptively open to the public and there is an important right of access which should not be closed except for compelling countervailing reasons. [Citation.] No such reasons have been presented. Upon payment of reasonable costs, plaintiff [the operator of a commercial jury investigation service] is entitled to a copy of the master list of qualified jurors containing names and addresses." (*Pantos, supra,* 151 Cal.App.3d at pp. 262–263.)

The proposition that master jury lists are public records was restated by the Supreme Court in *Jackson,* albeit in dicta.[14] (*Jackson, supra,* 13 Cal.4th at pp. 1194–1195 ["master lists of jury pools . . . are judicial records that are or should be available to the public"].) *Jackson* relied on *Pantos* for this proposition, as well as a second case which itself relied on *Pantos*. (*Jackson,* at pp. 1194–1195; *People v. Rhodes* (1989) 212 Cal.App.3d 541, 550.) Although *Jackson* established the "particularized showing" required for discovery related to a fair cross-section challenge, the court indicated no such showing is required for public records. (*Jackson,* at pp. 1194–1195; see *Roddy v. Superior Court* (2007) 151 Cal.App.4th 1115, 1135 (*Roddy*) ["Regardless of a defendant's constitutional right to pretrial discovery, 'some

---

[14] We are mindful that "even dicta of the Supreme Court should not be disregarded by an intermediate court without a compelling reason." (*California Coastal Com. v. Office of Admin. Law* (1989) 210 Cal.App.3d 758, 763.)

of the information sought, such as master lists of jury pools, . . . are judicial records that are or should be available to the public.' "].)[15]

C. *Post-*Pantos *Statutes*

The Jury Commissioner contends that various statutes enacted after *Pantos* have effectively overruled the case by prohibiting the disclosure of information contained in the master and qualified lists. We disagree.

1. *Section 197(c)*

The primary statute relied on by the Jury Commissioner is section 197, subdivision (c) (hereafter, section 197(c)): "The Department of Motor Vehicles shall furnish the jury commissioner of each county with the current list of the names, addresses, and other identifying information of persons residing in the county who are age 18 years or older and who are holders of a current driver's license or identification card . . . . The jury commissioner shall not disclose the information furnished by the Department of Motor Vehicles pursuant to this section to any person, organization, or agency." The Jury Commissioner argues section 197(c)'s prohibition on the disclosure of information furnished by the Department of Motor Vehicles (DMV) encompasses the master and qualified lists, which are created in part with that information.

" 'As in any case involving statutory interpretation, our fundamental task here is to determine the Legislature's intent so as to effectuate the law's purpose.' [Citation.] The well-established rules for performing this task

---

[15] The Jury Commissioner notes that in *Jackson,* the Supreme Court affirmed the trial court's refusal to disclose the master jury list. (See *Jackson, supra,* 13 Cal.4th at pp. 1193, 1195.) The Supreme Court affirmed on harmless error grounds, however, and did not find the trial court's refusal was proper. (*Ibid.* ["any error the trial court may have made in denying defendant access to jury pool master lists or other public records was not prejudicial"].)

16

require us to begin by examining the statutory language, giving it a plain and commonsense meaning. [Citation.] We do not, however, consider the statutory language in isolation; rather, we look to the statute's entire substance in order to determine its scope and purposes. [Citation.] That is, we construe the words in question in context, keeping in mind the statute's nature and obvious purposes. [Citation.] We must harmonize the statute's various parts by considering it in the context of the statutory framework as a whole. [Citation.] If the statutory language is unambiguous, then its plain meaning controls. If, however, the language supports more than one reasonable construction, then we may look to extrinsic aids, including the ostensible objects to be achieved and the legislative history." (*Los Angeles County Metropolitan Transportation Authority v. Alameda Produce Market, LLC* (2011) 52 Cal.4th 1100, 1106–1107.)

The plain language of section 197(c), with its blanket prohibition on disclosure of information furnished by the DMV, could be construed to prohibit the disclosure of subsequent iterations of that information, such as the master and qualified juror lists. However, such a construction is not compelled by the language. Moreover, to so construe the statute would prohibit any disclosure of juror names furnished by the DMV, a construction in direct conflict with section 237, subdivision (a), which provides, "The names of qualified jurors drawn from the qualified juror list for the superior court *shall be made available to the public upon request*," absent a compelling interest in nondisclosure. (§ 237, subd. (a)(1), italics added.)

Accordingly, we turn to the legislative history of section 197(c) for assistance in construing the statute.[16] Section 197 was enacted in 1988 as part of the then-new Act. (Stats. 1988, ch. 1245, § 2.) The Legislative Counsel's Digest characterized an early version of the bill as enacting "an extensive revision of the law with respect to juries, consolidating various provisions relative to juries in civil and criminal causes, and revising provisions relative to," among other subjects, "juror's rights to privacy." (Assem. Bill No. 2617 (1987–1988 Reg. Sess.) as amended Jan. 4, 1988, at pp. 1–2.) This early version of the bill included provisions stating, "It is the policy of the State of California that all persons selected for jury service have a right to personal privacy. The jury commissioner shall not release, disclose, or provide access to, any information gathered in connection with jury selection or service" except on a showing of good cause, and "All records and papers compiled and maintained by the jury commissioner in connection with the selection and service of jurors are confidential and shall not be subject to disclosure pursuant to the Public Records Act." (Assem. Bill No. 2617 (1987–1988 Reg. Sess.) as amended Jan. 4, 1988, at pp. 9-10.) These provisions remained through two amendments; a third amendment retained the latter

---

[16] We grant Defendant's request for judicial notice of this legislative history, except for those records included in Defendant's submission that were created after the bill's enactment or that are letters to various legislators or the governor for and against the bill. (See *Metropolitan Water Dist. v. Imperial Irrigation Dist.* (2000) 80 Cal.App.4th 1403, 1425–1426 ["[A] court will generally consider only those materials indicative of the intent of the Legislature as a whole. . . . [L]etters to various legislators and to the Governor expressing opinions in support of or opposition to a bill . . . generally should not be considered."].) We also grant Defendant's unopposed request for judicial notice of the legislative history of a predecessor to section 197(c). We deny as irrelevant Defendant's request for judicial notice of a 1986 Judicial Council report and the legislative history of a 2000 statute.

18

but replaced the former with provisions prohibiting jury commissioners from releasing information gathered in connection with jury selection absent a court order, and providing for courts to give access to the master list, upon written request, to parties, and to nonparties absent compelling reasons to deny access. (Assem. Bill No. 2617 (1987–1988 Reg. Sess.) as amended Jan. 21, 1988, at pp. 10–11; *id.,* as amended Mar. 23, 1988, at pp. 10–11; *id.,* as amended Jun. 15, 1988, at pp. 10–12.)

Legislative committee reports discussing these versions of the bill expressly refer to *Pantos's* holding that master lists of qualified jurors are subject to public inspection and note that *Pantos* "would therefore be overruled by" the bill. (Assem. Com. on Judiciary, Analysis of Assem. Bill No. 2617 (1987–1988 Reg. Sess.) as amended Jan. 4, 1988, p. 2; Sen. Com. on Judiciary, Analysis of Assem. Bill No. 2617 (1987–1988 Reg. Sess.) as amended June 15, 1988, p. 5.) One committee report noted these provisions were "[b]y far the most contentious area" of the bill, with opponents including the California Newspaper Publishers Association, the American Civil Liberties Union, and the National Jury Project. (Sen. Com. on Judiciary, Analysis of Assem. Bill No. 2617 (1987–1988 Reg. Sess.) as amended June 15, 1988, pp. 3, 5.) A committee report set forth competing arguments: "Proponents state that the intent of the privacy/disclosure provision is to provide guidance for jury commissioners because of the delicate nature of this issue. In one sense they are concerned about the protection of jurors who in many instances are edgy about performing jury duty. The other aspect of that concern is the potential for liability on the part of a commissioner or staff person who releases information about a juror to a member of the public and the latter ends up inflicting serious injury or worse on the juror. [¶] Opponents reply to this point by referring to a 1986 Judicial Council report

19

which concluded that very few jurors are concerned about invasion of their privacy. The report stated that 'no statutory or regulatory action is necessary or desirable.' Only 2.93% of the jurors expressed concern about privacy. Their concern was based on fear of a criminal defendant's use of identifying information which might lead to retaliation. Opponents suggest that the court is not precluded from implementing special controls to protect the privacy of jurors in the unusual situation where extraordinary protection is required." (Sen. Com. on Judiciary, Analysis of Assem. Bill No. 2617 (1987–1988 Reg. Sess.) as amended June 15, 1988, p. 4.)

Although the nondisclosure language of section 197(c) appeared in early versions of the bill, the provision was not referred to in any of these discussions. (Assem. Bill No. 2617 (1987–1988 Reg. Sess.) as amended Jan. 4, 1988, at p. 6; *id.*, as amended Jan. 21, 1988, at p. 6; *id.,* as amended Mar. 23, 1988, at p. 6; *id.*, as amended Jun. 15, 1988, at p. 6.) Significantly, unlike the juror privacy provisions set forth above, the nondisclosure language of section 197(c) was already present, in substantial part, in then-section 204.7. (Former section 204.7, as amended by Stats. 1983, ch. 425, § 1 ["The jury commissioner shall not disclose the information furnished by the Department of Motor Vehicles pursuant to this section to any person, organization, or agency for any use other than the selection of trial jurors."].) Former section 204.7 was repealed by the same bill that enacted section 197(c). (Stats. 1988, ch. 1245, § 1.)

In a late amendment, the controversial provisions limiting access to the master list and other jury selection records were removed, and they were not included in the enacted bill. (Assem. Bill No. 2617 (1987–1988 Reg. Sess.) as amended Aug. 2, 1988, at pp. 10–11; Stats. 1988, ch. 1245, § 2.) Section 197(c), of course, was included in the enacted bill. (Stats. 1988, ch. 1245, § 2.)

20

The Governor's Office of Local Government Affairs commented about the enrolled bill, "The bill received widespread opposition in earlier versions, but recent amendments have removed this opposition." (Off. of Local Government Affairs, Enrolled Bill Rep. on Assem. Bill No. 2617 (1987–1988 Reg. Sess.) Sept. 16, 1988, p. 3.) The Legislative Counsel's Digest notes the bill "consolidat[ed] various provisions relative to juries in civil and criminal causes, and revis[ed] provisions relative to" a number of aspects of jury selection and service. (Legis. Counsel's Dig., Assem. Bill No. 2617 (1987–1988 Reg. Sess.) Summary Dig., pp. 415–416.) The list of revised provisions does not include "juror's rights to privacy," which had appeared in the Digest to earlier versions of the bill. (Compare *ibid.*; with, e.g., Legis. Counsel's Dig., Assem. Bill No. 2617 (1987–1988 Reg. Sess.) as amended Jan. 4, 1988, at pp. 1–2.)

This legislative history strongly indicates the Legislature did not understand section 197(c) to restrict public access to jury lists. First, committee reports referred to *Pantos's* holding as "existing authority," indicating an understanding that it reflected the then-current state of the law. Second, section 197(c)'s material language was simply moved from a different statute, suggesting that its enactment was not intended to change existing law, but rather was part of the Act's "consolidati[on of] various provisions relative to juries . . . ." (Legis. Counsel's Dig., Assem. Bill No. 2617 (1987–1988 Reg. Sess.) Summary Dig., p. 415.) Third, the extensive discussion of proposed provisions that would "overrule[]" *Pantos*, and the omission of these provisions from the enacted bill, demonstrate the Legislature's overarching intent to leave *Pantos* intact. Accordingly, we have little difficulty concluding that section 197(c) does not prohibit disclosure of master or qualified jury lists as public records.

### 2. *Additional Statutes*

The Jury Commissioner also relies on a number of other statutes enacted after *Pantos* that prohibit the disclosure of specific information, to wit, "home address, telephone number, email address, precinct number, or other number specified by the Secretary of State for voter registration purposes" (Gov. Code, § 6254.4, subd. (a), added by Stats.1994, ch. 1207, § 12, with subsequent amendments); "California driver's license number, the California identification card number, the social security number, and any other unique identifier used by the State of California for purposes of voter identification" (Gov. Code, § 6254.4, subd. (c), added by Stats. 1996, ch. 1123, § 14, with subsequent amendments; Elec. Code, § 2194, subd. (b)(1), added by Stats. 1994, ch. 1207, § 8, with subsequent amendments); and "driver's license number, identification card number, social security number, and signature contained on an affidavit of registration" (Elec. Code, § 2138.5, subd. (a), added by Stats. 2007, ch. 305, § 1, with subsequent amendments).

We need not decide whether any of these statutes prohibit disclosure of this information when it appears on the master or qualified jury lists, because none of the statutes prohibit disclosure of the only information sought by Defendant: names and zip codes. The Jury Commissioner's unsupported protest that redaction of other information from the master list database will require "additional cost" does not establish that redaction will be unduly burdensome and is not a basis to refuse disclosure of the names and zip codes on the list. "If a judicial administrative record contains information that is exempt from disclosure and the exempt portions are reasonably segregable, a judicial branch entity must allow inspection and copying of the record after deletion of the portions that are exempt from disclosure." (Rule 10.500(e)(1)(C); see also *Copley Press, Inc. v. Superior*

22

*Court* (1991) 228 Cal.App.3d 77, 88 (*Copley Press*) ["certain information [on prospective juror questionnaires] (e.g., telephone number, social security number, driver's license number) . . . should be segregated from the other questions and not released to the public"].) We are also not persuaded by the Jury Commissioner's cursory assertion that a protective order will not protect the privacy rights of persons not party to the order. A protective order prohibiting disclosure of social security numbers or other information contained in the master and qualified jury lists would protect the privacy rights of persons on that list. (*Millaud v. Superior Court* (1986) 182 Cal.App.3d 471, 476 ["We have no doubt the broad power of the trial court to fashion criminal discovery procedures . . . includes the power to issue protective orders preventing unjustified use of the requested materials. . . . We see no reason why the court cannot protect against disclosure which would hamper a third party or injure its interests . . . ."]; see also *Roddy, supra,* 151 Cal.App.4th at p. 1140 [noting trial court ordered "production of the merged or master list subject to a protective order"].)

The Jury Commissioner also relies on the following statement in *People v. Granish* (1996) 41 Cal.App.4th 1117: " 'the Legislature was trying to close the door to access of juror addresses and telephone numbers to the extent that it could—not open it to information on demand.' " (*Id.* at p. 1126.) But both the facts of *Granish* and the statutes it construed involve *postverdict* access to information about criminal trial jurors. (*Id.* at p. 1122; §§ 206, 237.) The legislative intent stated in *Granish*, thus, does not apply to *prospective* jurors. (*Bellas, supra,* 85 Cal.App.4th at p. 650 ["[A] truncated history of section 237 clearly reveals that: 1) the harm the Legislature perceived from disclosure of personal juror identifying information was postverdict harassment and possible physical danger from those who obtained knowledge

of the juror's name, address and telephone number; 2) the privacy interest to be protected was the right of the jurors to be left alone once their service was complete; 3) the class of jurors who needed protection was those who actually sat on the jury and participated in the verdict; and 4) the permissible means of protecting this limited right of confidentiality is to redact the personal juror identifying information from court records, including questionnaires."].)

Indeed, while one part of section 237 (one of the statutes construed in *Granish*) provides that criminal trial jurors' personal identifying information shall be sealed following the verdict (§ 237, subd. (a)(2)), another part provides, "The names of qualified jurors drawn from the qualified juror list for the superior court shall be made available to the public upon request unless the court determines that a compelling interest, as defined in subdivision (b), requires that this information should be kept confidential or its use limited in whole or in part." (§ 237, subd. (a)(1); see also *id.*, subd. (b) ["A compelling interest includes, but is not limited to, protecting jurors from threats or danger of physical harm."].) Thus, not only was the Legislature's privacy concern limited to postverdict criminal trial jurors, the Legislature also took pains to expressly provide that the presumption of openness applied to the names of prospective jurors.[17]

---

[17] The Jury Commissioner does not argue that section 237, subdivision (a)'s express provision somehow indicates that other lists of prospective jurors— such as master and qualified lists—are not public. Such a construction would contravene the well-established presumption of openness discussed *ante* in part III.A, and would also have the absurd result of rendering a prospective juror's name nonpublic only until that prospective juror is called for possible service.

Accordingly, none of the statutes relied upon by the Jury Commissioner preclude disclosure of master and qualified jury lists.[18]

D. *Privacy Rights*

The Jury Commissioner also points to the privacy rights of persons on the master and qualified jury lists. We find no basis to conclude that privacy rights preclude disclosure of the names and zip codes on those lists.

The Jury Commissioner points to the right to privacy appearing in the California Constitution. (Cal. Const., art. I, § 1 ["[a]ll people . . . have inalienable rights" including "privacy"].) He also relies on rule 10.500's exemption of "personal information whose disclosure would constitute an unwarranted invasion of personal privacy," and an exemption applicable when, "on the facts of the specific request for records, the public interest served by nondisclosure of the record clearly outweighs the public interest served by disclosure of the record." (Rule 10.500(f)(3), (12).) The Jury Commissioner does not contend that any unique privacy interests apply in this case, nor did the trial court so find. In other words, the Jury Commissioner's argument is that privacy interests prohibit disclosure of master or qualified jury lists in every case.

––––––––––––––––––

[18] At oral argument, the Jury Commissioner pointed to a 2019 bill providing for litigants pursuing fair cross-section motions to obtain, upon request, "copies of the lists of all jurors' names, including the identifying information of all persons who have previously served as jurors . . . ." (Sen. Bill No. 310 (2019–2020 Reg. Sess.) as amended Apr. 29, 2019, at p. 4.) The Jury Commissioner argued this showed the Legislature understood these lists were not public records, and the Legislature's decision not to enact this provision demonstrates *Pantos* has been overruled. Even were we to agree that the Legislature can overrule existing authority through inaction, we disagree that the Jury Commissioner's interpretation is the only possible explanation. To the contrary, a more likely explanation is the Legislature determined the provision was unnecessary in light of *Pantos.*

As an initial matter, such an approach has been found inappropriate. "[A]n individualized approach rather than a blanket one is appropriate in considering the privacy rights of prospective jurors. Not only does such an approach preserve the constitutional values of openness, it also enables the trial court to 'ensure that there is in fact a valid basis for a belief that disclosure infringes a significant interest in privacy.' " (*Copley Press, supra,* 228 Cal.App.3d at p. 86 [considering access to written questionnaires].)

Here, the Jury Commissioner makes no attempt to explain why disclosure of the names and zip codes of prospective jurors would infringe a significant interest in privacy. *Lehman v. City and County of San Francisco* (1978) 80 Cal.App.3d 309, concluded a prospective juror's constitutional right of privacy did not bar disclosure of his identity because, in part, "his status as a prospective juror . . . . was not of personal nature" and his "appearance on the list of prospective jurors was not voluntary and revealed nothing about him since selection for jury duty is random." (*Id.* at p. 313; accord, *Pantos, supra,* 151 Cal.App.3d at p. 262 [acknowledging courts' "inherent power to control their own records to protect jurors' privacy," but finding no reason for nondisclosure of master jury list].) This analysis remains persuasive and the Jury Commissioner presents no contrary argument. (Cf. *Press-Enterprise, supra,* 464 U.S. at p. 511 ["The jury selection process may, in some circumstances, give rise to a compelling interest of a prospective juror when interrogation touches on deeply personal matters that person has legitimate reasons for keeping out of the public domain."].)

26

Accordingly, we are not persuaded that, as a general matter, prospective jurors' privacy rights overcome the presumption of public access to names and zip codes appearing on master and qualified jury lists.[19]

E.   *Conclusion*

In sum, we conclude that master and qualified jury lists—at least with respect to the names and zip codes on the lists—are disclosable as public records.[20]  We will direct the trial court to grant Defendant access to these records, and to reopen his fair cross-section challenge so that he may present any new evidence and argument following review of these records.

IV.   *Merge/Purge Information and Jury Survey*

Defendant does not dispute that, to obtain the merge/purge information and permission to conduct a jury survey, he must make the particularized showing identified in *Jackson*.  The parties dispute whether Defendant satisfied this burden.  We need not and do not decide this issue.

In the trial court, Defendant argued that a reasonable approach would be to allow him to analyze the master list before determining whether

---

[19] Because we have rejected the contentions that disclosure is precluded by statute or privacy interests, we also reject the Jury Commissioner's reliance on Evidence Code section 1040, subdivision (b), which provides: "A public entity has a privilege to refuse to disclose official information" if disclosure is either "forbidden by . . . statute" or is "against the public interest because there is a necessity for preserving the confidentiality of the information that outweighs the necessity for disclosure in the interest of justice."  We need not decide whether, as Defendant contends, the Jury Commissioner forfeited any reliance on this statute by failing to raise it earlier.

[20] Because of this conclusion, we need not decide whether, as Defendant contends, he is entitled to the master and qualified jury lists pursuant to his constitutional or statutory fair cross-section rights.  The Jury Commissioner's argument that the master and qualified jury lists will not assist Defendant in his fair cross-section challenge is of no moment.  Defendant need make no such showing to obtain these public records.

additional discovery should be granted. Defense counsel argued, "If Dr. Weeks can run an analysis on the master list, he'd have a large sample. And if there was under-representation in that list, the current list, then, I think, the next step would be for the Court to consider whether a jury survey . . . would be appropriate." Counsel later continued, "if we can't show statistical under-representation after reviewing that large list [the master list], then the Court, I think, would be on solid grounds in saying, 'There's no point in going forward at this stage given this record.' "

We see no reason not to follow the approach proposed by counsel. We have concluded Defendant is entitled to the master and qualified jury lists. After receiving and reviewing those lists, Defendant may choose to either withdraw the remainder of his renewed discovery request, or he may seek to establish entitlement to the remaining requests with the addition of data from the master and qualified lists.

## DISPOSITION

Let a peremptory writ of mandate issue directing the respondent court to (1) set aside its order denying Defendant's renewed discovery motion as to the master and qualified jury lists, merge/purge information, and jury survey; (2) enter a new order granting Defendant's renewed discovery motion as to the master and qualified jury lists, and reserving decision on the motion as to the merge/purge information and jury survey pending Defendant's review of the master and qualified jury lists;[21] (3) set aside its order denying Defendant's fair cross-section challenge; and (4) permit Defendant to present any new evidence and argument on his fair cross-section challenge following

---

[21] Nothing precludes the respondent court from establishing a deadline for Defendant to either withdraw his discovery request as to these items or revise that request in light of data contained in the master and qualified jury lists.

28

his receipt of the master and qualified jury lists and any other discovery granted by the trial court.  In all other respects, the petition for writ of mandate or prohibition is denied.

_____

SIMONS, Acting P.J.

We concur.

_____

NEEDHAM, J.

_____

REARDON, J.*

(A159577)

_____

* Judge of the Alameda County Superior Court, assigned by the Chief Justice
pursuant to article VI, section 6 of the California Constitution.

Superior Court of Marin County, No. SC197429E, Hon. Andrew E. Sweet, Judge.

Law Office of Michael N. Burt and Michael N. Burt; Law Office of John T. Philipsborn and John T. Philipsborn, for Petitioner.

Sanger Swysen & Dunkle, Stephen Kerr Dunkle, for California Attorneys for Criminal Justice, Amicus Curiae in support of Petitioner.

Xavier Becerra, Attorney General, Lance E. Winters, Chief Assistant Attorney General, Jeffrey M. Laurence, Senior Assistant Attorney General, Alice B. Lustre and Sarah J. Farhat, Deputy Attorneys General, for Real Party in Interest the People.

Cummings, McClorey, Davis, Acho & Associates, Sarah L. Overton, for Real Party in Interest James M. Kim.

No appearance for Respondent Superior Court.