[No. D016546. Fourth Dist., Div. One. May 7, 1992.]

COPLEY PRESS, INC., Petitioner, v.
THE SUPERIOR COURT OF SAN DIEGO COUNTY, Respondent;
G. DENNIS ADAMS, as Judge of the Superior Court et al., Real Parties
in Interest.

## COUNSEL

Gray, Cary, Ames & Frye, Guylyn R. Cummins, Harold W. Fuson, Jr., and Judith L. Fanshaw for Petitioner.

Lloyd M. Harmon, Jr., County Counsel, Diane Bardsley and Ian Fan, Chief Deputy County Counsel, for Respondent.

No appearance for Real Parties in Interest.

## OPINION

**FROEHLICH, J.**—Copley Press, Inc. (petitioner) brought an original action in the superior court, naming as respondents the superior court as well as six specific sitting judges of the court. The petition sought an order providing access to certain court records, and was based upon the contention that petitioners had both constitutional and statutory rights to view the records. ■ The denial of the petition raises an issue reviewable by extraordinary writ, because the contention asserts failure by the court to perform a ministerial act (opening court records to public view) and also contends a violation of rights which can be effectively remedied only by prompt and extraordinary relief. (See Code Civ. Proc., §§ 1085, 1086; 8 Witkin, Cal. Procedure (3d ed. 1985) Extraordinary Writs, § 4, p. 643.) We therefore have entertained the writ, sought full briefing and heard oral argument.

### FACTUAL AND PROCEDURAL BACKGROUND

Unlike most reported cases involving assertion by the press of a right to access to court proceedings or records, this petition addresses no pending or

past court case or hearing. Petitioners sought to review randomly the minute books of the clerks serving six specific superior court judges.[1] The written record before us does not disclose the purpose or objective of the desired search. Not wanting to ignore the obvious, however, we sought and received a stipulation from counsel respecting the genesis of the petitioner's interest in the minute books. News stories in the local press in recent weeks have highlighted certain portions of the financial reports required to be filed by judges of the superior court. The focus has been upon gifts reported by certain judges from certain local attorneys. The question raised by the news articles relates to the possibility that the receipt of such gifts might in some way have improperly influenced judicial conduct.

The petitioner sought to review the minute books of the courts of the several judges for the purpose of determining which attorneys or which law firms appeared before the judges over a period of time associated with receipt of the gifts. Petitioner contends, and we find as a matter of fact from the evidence in the record, that the minute books constitute the only easily accessible source of the daily chronology of court activities. The other court records reflective of appearances by attorneys would be kept not by chronology but by name of case. In order to ascertain appearances and rulings it would be necessary, if petitioner cannot access the clerk's minute book, to determine from the master calendar records which cases were assigned to the court on the days in question, and then resort to the documents within each such case file.

Petitioner sought to review the several minute books by informal request to the several clerks and judges. Upon being refused access petitioner brought this motion before the presiding judge of the superior court. The judge ruled that the minute books were not official court records and hence were not open to public view.

To the extent the trial judge's ruling dealt with constitutional principles or construed a statute, we of course exercise complete review. The characterization of the document sought to be viewed by petitioner is, however,

---

[1]The written application presented to the court was entitled "Request for Access to Clerk Entries or Minutes of Judicial Proceedings for the [six named superior court judges]." The court ordered a "miscellaneous" file be created for the case, and treated the appearance as an ex parte motion. County counsel has appeared "on behalf of the Superior Court" but not specifically on behalf of any of the six named judges. The record does not disclose any service upon the individual judges, and no response has been filed specifically by them or on their behalf.

largely a factual determination.[2] The facts found and described by the trial judge, and not challenged by petitioner, are as follows: The clerk of each court keeps a book in which is written a chronology of the events occurring each day in the courtroom. The keeping of this record is not prescribed by statute or court rule, and the precise form of the minutes varies from department to department. In the words of the presiding judge: "The minutes will track the history of the proceedings in the courtroom, [the] . . . convening [of] the case on each day; who was present; the witnesses called and the various matters that are in the . . . proceedings in a trial of the case, . . . all of the motions; who was present; the nature of the hearing and the decision of the judge . . . ."

The formal orders of the court as well as the formal court records are reflected in the formal minutes of the particular case in question. These formal minutes are prepared by the clerk at some time later than the occurrences reflected, and are usually prepared from the longhand minutes which will have been kept in the minute book during the course of the day. The clerk's informal minutes were variously described by the judge as "rough notes," "rough minutes," and "rough books."

The content of the clerk's minute book is largely left to the clerk's discretion. Some clerks keep the names, addresses and telephone numbers of jurors in their minute books. Although there is no legal requirement for retention of these minutes, a supervising clerk of the San Diego Superior Court in 1989 issued a memorandum to the clerks requiring that they "keep legible rough minutes in a minute book for at least two years." The purpose of this requirement was to aid in the reconstruction of typed minutes when the typed minutes have been lost.

### ISSUE PRESENTED

The issue posed for this court is whether informal notes prepared by the court clerk as a precursor to creation of the formal minutes of the court are public records to which the press may require access. The "informal notes" are kept in a book in chronological order. By local custom, represented by a directive from the chief clerk, the notes are kept for a period of two years.

[2]See, e.g., *Fortenberry* v. *Weber* (1971) 18 Cal.App.3d 213, 219-220 [95 Cal.Rptr. 834], where the Court of Appeal was faced with the determination of the nature of the "minute book" kept by the superior court. The appropriate resolution of this issue was a referral to the superior court to make findings. The Court of Appeal then accepted the superior court's characterization of the minute book as the only and permanent minutes of the court, even though the entries in the book consisted only of the longhand inscriptions by the clerk. As will be seen in the text following, the minute books in this case did not comprise the final record of proceedings, but only preliminary notes of same.

The notes are referred to as the clerk's "minute book," but are more properly termed the clerk's "rough minutes."

## DISCUSSION

The statute generally governing public access to governmental documents is the California Public Records Act, contained in Government Code[3] section 6250 et seq. Section 6257 confirms the right of "any person" to inspect all "public records" in the hands of any state or local agency, except for records specifically exempted. The term "public records" is defined broadly in section 6252, subdivision (d) as "any writing containing information relating to the conduct of the public's business, prepared, owned, used or retained by any state or local agency regardless of physical form or characteristics." Subdivision (e) of the same section describes "writing" as including hand-written records.

■ If this law were applicable to court records, it would surely cover the clerk's minutes herein discussed. However, the statute is not applicable. Specifically excluded by section 6252, subdivision (a) are the records of the agency "provided for in . . . Article VI of the California Constitution." Article VI describes the court system of the state. This provision has been described as "unambiguous language [which] speaks clearly on this point and . . . expressly exempts the state courts from the provisions of the Act." (*Pantos* v. *City and County of San Francisco* (1984) 151 Cal.App.3d 258, 262 [198 Cal.Rptr. 489].)

The fact that there is no specific statutory requirement for access to court documents does not, of course, permit exclusion of the public from same. Both the federal (First Amendment to the United States Constitution) and the state (article I, section 2(a), California Constitution) Constitutions provide broad access rights to judicial hearings and records. A lengthy list of authorities confirms this right in general, and in particular as it pertains to the press, both in criminal and civil cases.[4] The leading case on the subject in California, *Estate of Hearst, supra,* 67 Cal.App.3d 777 confirms that notwithstanding the statutory exception in the California Public Records Act

---

[3]All statutory references are to the Government Code unless otherwise specified.

[4]See, e.g., *Nixon* v. *Warner Communications, Inc.* (1978) 435 U.S. 589 [55 L.Ed.2d 570, 98 S.Ct. 1306]; *Gannett Co.* v. *DePasquale* (1979) 443 U.S. 368 [61 L.Ed.2d 608, 99 S.Ct. 2898]; *Richmond Newspapers, Inc.* v. *Virginia* (1980) 448 U.S. 555 [65 L.Ed.2d 973, 100 S.Ct. 2814]; *Globe Newspaper Co.* v. *Superior Court* (1982) 457 U.S. 596 [73 L.Ed.2d 248, 102 S.Ct. 2613]; *Press-Enterprise Co.* v. *Superior Court of Cal.* (1984) 464 U.S. 501 [78 L.Ed.2d 629, 104 S.Ct. 819]; *Press-Enterprise Co.* v. *Superior Court* (1986) 478 U.S. 1 [92 L.Ed.2d 1, 106 S.Ct. 2735]; *Oregonian Pub.* v. *U.S. Dist. Court for Dist. of Or.* (9th Cir. 1990) 920 F.2d 1462; *Rushford* v. *New Yorker Magazine, Inc.* (4th Cir. 1988) 846 F.2d 249; *Publicker Industries, Inc.* v. *Cohen* (3d Cir. 1984) 733 F.2d 1059; *Matter of Continental Illinois Securities Litigation* (7th

(Gov. Code, § 6250 et seq.) court records are public records open to inspection. (*Estate of Hearst, supra,* at p. 782.) While the courts have an inherent right to control their own records, preclusion from public inspection should be permitted only upon a showing that revelation would "tend to undermine individual security, personal liberty, or private property, or . . . injure the public or the public good." (*Id.* at p. 783.)

Many of the cases cited in footnote 4, *ante,* deal with the question of balancing the interests of secrecy of court documents against the public's right to know. These cases are of little instruction to us, because no issue was raised in this case concerning any specific prejudice which might result from making the minute books public. Petitioner readily agrees that anything of a sensitive nature contained in the minutes, such as the addresses and telephone numbers of jurors, could be redacted before press inspection of the books.

 We therefore conclude that *if* these minute books are court records they should be open to press and public inspection, absent some showing (not presently before us) as to why a specific clerk's minutes should be exempted from inspection. We therefore proceed to inquire as to the legal status of these minutes. We start by noting that "judicial record" is defined in Code of Civil Procedure section 1904 as "the record or official entry of the proceedings in a court of justice, or of the official act of a judicial officer, in an action or special proceeding." ·

Section 69844 requires that the clerk of each superior court "keep the minutes and other records of the court, entering at length within the time specified by law, or forthwith if no time is specified, any order, judgment, and decree of the court which is required to be entered and showing the date when each entry is made." We are satisfied that this section pertains to the formal minutes prepared by the clerk for filing with the specific cases to which the court action referred. These minutes would be official records under Code of Civil Procedure section 1904. The rough minutes which are the subject of this case are no doubt taken for the purpose of complying with section 69844, but they are not themselves the official minutes of court proceedings, being only notes prepared for the purpose of creating those official minutes at a later time.

Several cases, decided not in terms of public access to the minutes but with reference to the legal effect of an entry in the rough minutes, support this conclusion. "The rough minutes kept by the clerk of the court are not an

Cir. 1984) 732 F.2d 1302; *United States v. Criden* (3d Cir. 1981) 648 F.2d 814; *Estate of Hearst* (1977) 67 Cal.App.3d 777, 784 [136 Cal.Rptr. 821].

official record, but are a mere memorandum kept by him for his own convenience, and the permanent minutes constitute the only official record of the actions of the court." (*Meskell* v. *Culver City Unified School Dist.* (1970) 12 Cal.App.3d 815, 821 [96 Cal.Rptr. 773]; and see also *Jablon* v. *Henneberger* (1949) 33 Cal.2d 773, 774-775 [205 P.2d 1].)

We therefore conclude that the clerk's rough minutes are not a "judicial record" and hence are not documents which constitute or reflect in any reliable way the acts of the court. They are, however, written documents prepared by court personnel for important use in the court's processes. Does this identification of status entitle the public to access the clerk's minutes? We find no precedent for this question, and have been cited none by counsel. Petitioner contends that all writings created within the court premises by court personnel in connection with court business must be public records available for inspection by the press. Were this view to be adopted, access to court documents would be virtually the same as access to any other governmental documents, as is prescribed in sections 6252 and 6253, which would make the exclusion of court records set forth in subdivision (a) of section 6252 inoperative. We do not accept petitioner's broad argument. However, some difficulty is found in determining which written material in the courthouse should be, and which should not be, deemed a record open to public inspection.

In order to resolve this question we have examined and considered the various kinds of documents which are prepared in the course of a court's work and the purposes to which those documents reasonably should be put. We conceive a clear dichotomy between two classes of documents. The first class represents documentation which accurately and officially reflects the work of the court, such as its orders and judgments, its scheduling and administration of cases, its assignment of judicial officers and administrators. Included in such documentation, which we will call Category I documents, would be the official court minutes, all its written orders and dispositions, the official reports of oral proceedings, and the master calendar. Also included in Category I of court documents would be the various documents filed in or received by the court, such as the pleadings and motions filed by the parties and the evidence admitted in court proceedings. All of these documents represent and reflect the official work of the court, in which the public and press have a justifiable interest.

"[C]ourt records are public records, available to the public in general, including news reporters, unless a specific exception makes specific records nonpublic. [Citation.] To prevent secrecy in public affairs public policy makes public records and documents available for public inspection by

newsmen and members of the general public alike. . . . [¶] Traditional Anglo-American jurisprudence distrusts secrecy in judicial proceedings and favors a policy of maximum public access to proceedings and records of judicial tribunals." (*Estate of Hearst, supra,* 67 Cal.App.3d at pp. 782, 784.)

Acknowledging that this first group of documents encompasses a great volume and diversity of materials, including most of the contents of files in the courthouse, we must nevertheless agree that much written material is created inside the courthouse that does not fit the profile of this group of documents. The craft of the lawyer, judge and clerk involves important but elusive concepts, such as logic, justice, equity and the rule of law; however, the physical manifestation of these ideas is the written word. Courts may not produce much heat or light, and in fact not very much of a tangible nature at all, but they produce prodigious quantities of words. The end product of all this effort is hopefully accurate, well conceived and generally beneficial. In order to reach that end result, however, an awful lot of defective words needs to be produced.

Before a judgment goes out there is usually a draft prepared and then edited. Jury instructions are written and rewritten. Informal notes are prepared by judges to assist them in conducting voir dire. Most judges keep personal notes of the testimony and argument brought to their court. Court reporters keep original notes, which are corrected and amplified before a final reporter's transcript is issued. If we look to the courts of appeal, we will find enormous quantities of initial drafts, memoranda, critical analyses of others' work, and all kinds of preliminary writings. All of this material, which we will call Category II writings, is created in the course of judicial work and for the purpose of carrying out judicial duties. We submit, however, that none of such material should be the subject of public inspection.

The very nature of preliminary drafts, personal notes and rough records is such as to argue against their inspection by third parties. Such inspection and possible use would in many cases be detrimental to the user, since the materials in Category II are tentative, often wrong, and sometimes misleading. It is for this very reason that these materials are not regarded as official court records—they do not speak for the court and do not constitute court action. Perhaps more importantly, a requirement that these Category II materials be made available for public view would severely hamper the users of the materials. The reason for preparation of a first draft is to extract raw and immature thoughts from the brain to paper, so that they can be refined and corrected. The judge's personal bench notes are constructed so as to remind him, in his personal fashion and not in a form digestible by the public, of the aspects of the case he thought important. Much more harm

would be done to the judicial process by requiring this Category II material to be available to the public, than would ever be overborne by any benefit the public might derive thereby.

While we have constructed clear distinctions between our two categories of documents, and have relegated most identifiable documents easily to one class or the other, we must admit that certain kinds of documents are on the margin of the classes' definitions. The clerk's rough minutes are of this nature. They are clearly not official records of the court in the sense that they constitute court action, or can be relied upon as reflecting court proceedings with complete accuracy. On the other hand, they do not partake of the discretionary and incomplete content that characterizes the judge's bench notes or the first drafts of various court documents.

 The clerk's role in the courtroom is ministerial. (See *Union Bk. & Tr. Co.* v. *Los Angeles County* (1934) 2 Cal.App.2d 600, 609 [38 P.2d 442]; *Peoples Ditch Co.* v. *Foothill Irr. Dist.* (1932) 123 Cal.App. 257, 261 [11 P.2d 86].) The clerk is obligated to prepare a record of the events of the court's sessions. This record, including the clerk's rough notes, involves the exercise of no significant discretion on the part of the clerk. The presiding superior court judge in this case remarked that "the clerk's records that lead up to the entry of official minutes in a case are nobody's business but [the] clerk's." Upon reflection, we believe his honor was mistaken. The clerk's rough minutes are made not only for his benefit but for the use of the court, and very possibly for the benefit of parties and others interested in the litigation. This conclusion is supported by the directive to San Diego court clerks from the supervising clerk which required retention of the rough minutes for a period of two years, because occasionally upon loss of the official minutes "the rough minutes are needed to reconstruct the record."

We therefore conclude that the clerk's initial or "rough" minutes constitute a court record which should be available for public inspection. This written document is kept regularly by all clerks. It reflects ministerial action by the clerk. It is a useful document because it is the one repository of easy access which provides a continuous chronology of each court's daily activities. Further, unlike many of the writings we have described above, which may contain tentative or erroneous information or conclusions the release of which to the press would be detrimental to the judicial process, the clerk's minute book presumptively contains only accurate, descriptive and non-discretionary information. We rule that the clerk's rough minutes are court records which should be available for public inspection.

### DISPOSITION AND ORDER

Determining that the minute books should be available to the public does not, however, easily lead to a resolution of this writ petition. The presiding

superior court judge, in a "clarification" of his initial order, denied the request for inspection of minute books on the additional ground that he had no authority to direct the production of the minute books of other superior court judges. He stated: "The request for access as to those records must be made to the individual judge presiding on the case to which they relate." There is, indeed, merit to this position. ■ The immediate supervision and control of the activities of each trial court is clearly under the control of the judge of that court.[5] One superior court judge has no power to require another to perform a judicial act, and the presiding judge is merely one of equals who has been given specific administrative powers, not including the right to administer the records of a coequal judge. (See Cal. Rules of Court,[6] rules 205, 205.1.)[7]

However, the presiding judge *is* the administrative leader of the court. He is vested with the power to "supervise the administrative business of the court and have general direction and supervision of the attaches of the court" (rule 205(10)); and he is authorized to "meet with any committee of the bench, bar, news media, and community to review problems and to promote understanding of the administration of justice." (Rule 205(14).) While the presiding judge may not (as he ruled) have the authority to require release to the press of the clerk's minutes of other departments of the superior court, he surely has the power to make at least a preliminary ruling as to the nature of records and whether they are subject to press inspection. We would assume that most of the judges of the superior court would honor the presiding judge's determination of press access to the clerk's minutes, even though from a strictly technical perspective they might be free to make a contrary determination as to their own court's minutes.[8] We therefore find that the order rendered in this case is presumptively effective, notwithstanding any potential defect it may have, in terms of precluding press access to the clerk's minutes. The order should therefore be reversed.

---

[5]While little dispute will be found with this broad statement, actual authority for the proposition is difficult to identify. The trial judge's authority to rule on matters before him and conduct the business of his court cannot be questioned. (See Cal. Rules of Court, rule 206; 40 Cal.Jur. 3d, Judges, §§ 12, 13, pp. 232-234.) His actual control over other court personnel, however, may be more by reason of tradition and persuasion than because of legal authority. The court's bailiff is directly controlled by the sheriff or marshal. Until recent times in most counties the clerk and reporter were employees of the county clerk.

[6]All rule references are to the California Rules of Court.

[7]Cf. *People* v. *Woodard* (1982) 131 Cal.App.3d 107 at page 111 [182 Cal.Rptr. 254]: "The Superior Court, . . . though comprised of a number of judges, is a single court and one member of that court cannot sit in review on the actions of another member of that same court."

[8]We would also, of course, be required to note that an attitude of independence is exhibited by some superior court judges respecting their coequal presiding judge, as evidenced in this case by one judge of the San Diego Superior Court, who, immediately following the presiding judge's order, issued his own ex parte minute order requiring that his clerk continue to maintain the minutes as public records.

We remain perplexed, however, as to what sort of writ might be issued by this appellate court. The minutes sought by petition are minutes of courts to which no formal petition was addressed. We should not order a superior court judge to take action which he has not yet declined. Further, and as petitioner admits, each judge has the prerogative, indeed perhaps the obligation, of first viewing his minutes to determine whether nonpublic material might be redacted prior to press access.[9] We are therefore from a practical point of view precluded from granting petitioner the precise relief it seems to seek.

Our order is therefore as follows: The order of the presiding judge in this case is reversed, and he is directed to rehear the motion of petitioner and to make such ruling pertaining thereto as he conceives appropriate, in fulfilling his administrative duties as presiding judge, and in harmony with this decision. No further order or direction, as might pertain to the six named superior court judges, is at this time appropriate.

Let the writ issue accordingly.[10] This opinion is final as to this court five days after the date of filing. (Rule 24(d).)

Work, Acting P. J., and Huffman, J., concurred.

---

[9]We intend no advisory opinion of any kind as to what sorts of information contained in the minute books might, under the tests described by the cases cited in footnote 4 *ante*, be properly redacted prior to public inspection. We can surmise, however, that information which is clearly privileged might be contained in some minute books, such as the identify of confidential informants, the information contained in an inspection made by reason of a *Pitchess* motion, the telephone numbers of jurors, etc.

[10]There is authority for the issuance, upon a petition for writ of mandate, of relief short of that which was requested. (See 8 Witkin, Cal. Procedure (3d ed. 1985) Extraordinary Writs, § 191, p. 819; *Brown v. Superior Court* (1949) 34 Cal.2d 559, 566 [212 P.2d 878].)