Filed 7/2/21  Weischadle v. Vo CA2/1

# NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

## IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## SECOND APPELLATE DISTRICT

## DIVISION ONE

| | |
|---|---|
| GLORIA WEISCHADLE, | B304845 |
| Plaintiff and Respondent, | (Los Angeles County Super. Ct. No. LC107777) |
| v. | |
| ALEX VO et al., | |
| Defendants and Appellants. | |

APPEAL from an order of the Superior Court of Los Angeles County, Shirley K. Watkins, Judge.  Reversed with directions.

Goldberg Segalla, Peter J. Woo, David Y. Choi, and Jordan G. Cohen for Defendants and Appellants.

Gloria Weischadle, in pro. per., for Plaintiff and Respondent.

_____

Appellants Alex Vo, David Jones, and their law firm, Santiago & Jones (collectively S&J), moved the trial court for an order compelling arbitration of the malpractice lawsuit that former client Gloria Weischadle, respondent here, filed against them. The trial court concluded that the arbitration agreement Weischadle signed was unconscionable and unenforceable. Additionally, the trial court ruled that S&J had waived arbitration. On appeal, S&J contends that there was insufficient evidence of unconscionability or waiver. We agree, and reverse.

## FACTUAL BACKGROUND

Weischadle was injured in a fall at Los Angeles International Airport on September 2, 2015. Representing herself, Weischadle filed a personal injury complaint against Los Angeles World Airports (LAWA) on September 19, 2016. (*Weischadle v. Los Angeles World Airports* (Super. Ct. L.A. County, 2018, No. BC634298).)

On September 29, 2017, Weischadle retained S&J to represent her in her personal injury action against LAWA. Weischadle and Jones (on behalf of S&J) signed a document entitled "ATTORNEY-CLIENT CONTINGENCY CONTRACT," which contained the following provision:

"**ARBITRATION**

"Any dispute arising under this Contract or in connection with Attorney's services hereunder, including any claim by Client against Attorney for malpractice or other tort claims, shall be resolved by binding arbitration in accordance with the Commercial Arbitration Rules of the American Arbitration Association. Client acknowledges that he/she has been fully advised of all of the possible consequences of arbitration including but not limited to:

2

"a.  If a malpractice action arises from this Contract, neither Client nor Attorney will have the right to a jury trial.

"b.  Both parties retain the right to retain counsel to prepare their respective claims and/or defenses for the arbitration hearing.

"c.  Client can choose to hire an attorney who may not request or whose retainer agreement does not contain an arbitration provision."

Weischadle signed the agreement and initialed and dated each page.

On June 4, 2018, Jones, on behalf of S&J, and Weischadle signed a substitution of attorney form substituting Weischadle back into the litigation in propria persona against LAWA. The form was filed on June 11, 2018.

Weischadle represented herself at the LAWA personal injury trial, which began in October 2018. The trial court granted LAWA's motion for nonsuit in that action immediately following Weischadle's opening statement. (*Weischadle v. Los Angeles World Airports* (Oct. 28, 2019, B294949) [nonpub. opn.] at pp. 3, 5.) The trial court entered judgment for LAWA in that matter on November 5, 2018, and denied Weischadle's motion for new trial on December 20, 2018. (*Id.* at p. 5.) Our colleagues in Division Four affirmed the trial court's judgment in an unpublished opinion on October 28, 2019. (*Id.* at p. 9.)

## PROCEDURAL BACKGROUND

### 1.  *Motion to compel arbitration*

Weischadle filed the complaint in this action—alleging legal malpractice against S&J in connection with their representation of her in the LAWA action—on September 12, 2018, before trial in that matter.

3

At a hearing on July 2, 2019, the trial court granted a motion to quash service of Weischadle's legal malpractice complaint. Weischadle served the complaint on the defendants in July and August 2019.

On September 6, 2019, counsel for S&J filed a declaration in support of an automatic 30-day extension of time under Code of Civil Procedure[1] sections 430.41 and 435.5 to file a responsive pleading. The declaration stated that counsel had contacted Weischadle "to discuss the underlying facts, and to meet and confer regarding deficiencies in the complaint." The declaration stated that Weischadle had declined to meet until counsel had "reviewed the client file." Counsel estimated this would take several weeks, which would not leave sufficient time to meet and confer prior to the deadline to file a responsive pleading absent an extension.

S&J and Jones subsequently filed form declarations on October 9 and October 16, 2019, indicating that they would be filing demurrers and that Weischadle "failed to respond to [their] request to meet and confer or otherwise failed to meet and confer in good faith."

On November 8, 2019, S&J filed a motion to compel arbitration and stay the matter. The motion included a declaration from Jones stating, inter alia, that Weischadle had entered into the contingency agreement with S&J described above, and, "[o]n information and belief," had dated and initialed each page and signed the agreement.

Weischadle opposed the motion, arguing that S&J was engaging in delay tactics, and the doctrine of laches applied. Plaintiff further argued that S&J breached the retainer

---

[1] Unspecified statutory citations are to the Code of Civil Procedure.

4

agreement by failing to represent her adequately in her personal injury lawsuit, thus voiding the entire agreement, including the arbitration provision.

The trial court first heard the matter on January 14, 2020. The trial court's minute order indicated that the matter was "called for hearing and argued," and that the trial court requested supplemental briefing from each side, continuing the hearing to February 4, 2020. Regarding the supplemental briefing, the minute order stated, "No declarations or exhibits to be attached to said briefs." S&J's notice of the continued hearing indicated that the trial court "requested additional briefing regarding the enforceability and potential unconscionability of the subject arbitration clause, including whether that clause is unconscionable because it requires commercial—as opposed to consumer—arbitration."

The parties filed their supplemental briefs. S&J's brief indicated that it was "in response to questions raised *sua sponte* by the Court" regarding the propriety of the commercial arbitration provision. S&J argued that commercial arbitration provisions are enforceable and ethical in the attorney-client context, S&J's agreement with Weischadle was not a contract of adhesion, and the agreement was not ambiguous.

Weischadle's supplemental brief consisted primarily of citations to statutes and case law regarding arbitrability, unenforceability of arbitration agreements that limit statutory remedies, fraud in the inducement, unconscionability, and costs of arbitration. As to the specific facts of her case, she claimed she was under duress when she signed the substitution of attorney forms releasing S&J from her personal injury action, because S&J refused to return her documents to her unless she did so. Arguing that S&J should pay the costs of the arbitration, Weischadle stated that she had been disabled and unable to work

5

since her accident at the airport, had relied on defendants to represent her only to be abandoned shortly before trial, and that she lost her case as a result.

## 2. *Hearing and ruling*

The trial court issued a five-page tentative ruling in advance of the continued February 4 hearing, which concluded that the arbitration agreement was procedurally and substantively unconscionable. The trial court wrote that, although the agreement required disputes be resolved through commercial arbitration, "[t]here was no explanation of what COMMERCIAL arbitration meant; there were no AAA rules or fee schedules attached; the retainer does not mention that even though plaintiff would be hiring the defendants to represent her and she would not need to advance costs or owe them any money if she had no recovery, she would have to spend thousands of dollars to pursue a case against them in arbitration rather than pursuing a case in court for little or no money. In particular, the agreement is silent on who would be required to pay for arbitration."

The court continued, "The attorneys were clearly in a superior bargaining position. First, they are attorneys; plaintiff is not. Second, plaintiff was in a vulnerable state because of her injuries and the need to find an attorney to substitute into an existing case. Third, the attorneys knew that there was a substantial cost associated with COMMERCIAL arbitration but did not disclose this to plaintiff. That information was a material term[ ] of the agreement known to defendants and not disclosed to plaintiff, with whom they were in a fiduciary relationship. This term would be substantially prejudicial to plaintiff because of the cost and defendants knew, but did not disclose, that to plaintiff. Fourth, defendants knew that plaintiff was a consumer

6

and that CONSUMER arbitration through AAA was intended for persons in a consumer setting, as opposed to a commercial setting whether both sides are in a business arrangement. Here, plaintiff was obviously a consumer of legal services. By not telling plaintiff that there was a choice between consumer and commercial arbitration and the relative costs, plaintiff was intentionally kept in the dark and could not make a knowing waiver of her right to have a jury determine her case."

The trial court found "the 'evidence' by defendants of the circumstances of how the agreement was entered into is very thin and asserted 'on information and belief' and not based on personal knowledge." As clarified at the hearing and discussed *post*, this was a reference to the Jones declaration in support of the motion to compel arbitration.

The trial court in its tentative ruling also concluded that S&J had waived arbitration. The court reasoned that by filing a declaration invoking section 430.41's "automatic 30-day extension of time within which to file a responsive pleading," S&J had "availed themselves of remedies which were not available to them in arbitration." "What is striking to the court," the ruling stated, "is that defendants used the provisions of CCP section[s] 430.41 and 435.5 to give themselves an extension of time to file a demurrer but instead of filing a demurrer, they filed a motion to compel arbitration. They availed themselves of a statute *which was not intended to give them more time to file a motion to compel arbitration*; it is solely to allow meet and confer on a possible demurrer."

Responding to the tentative ruling at the hearing, S&J argued that there was no basis for the trial court's unconscionability findings because "there has been no evidentiary hearing and the court has not asked for evidence." The court responded that S&J "was given every opportunity to present

7

whatever evidence it wanted," and "what I ended up with was a declaration from your client on . . . information and belief, which is almost valueless in terms of proving any particular point." Here the trial court was referring to the Jones declaration in support of the original motion to compel arbitration, which stated "on information and belief" that Weischadle had initialed the pages of the agreement and signed it.  S&J noted that the court specifically instructed the parties not to submit additional declarations with the supplemental briefing.

S&J also disputed the trial court's conclusion regarding waiver, to which the court responded that it was wrong for S&J to use a statutory extension for filing a demurrer to instead file a motion to compel arbitration.

The trial court adopted its tentative ruling as its final ruling.  S&J timely appealed.

## DISCUSSION

### A.    The Unconscionability Finding Is Not Supported By Substantial Evidence

S&J argues the trial court's finding of unconscionability was not supported by substantial evidence.  We agree.

#### 1.    Applicable law

" 'California law . . . favors enforcement of valid arbitration agreements[,]' " and courts may decline to enforce them only on the same grounds as for other contracts.  (*Lange v. Monster Energy Co.* (2020) 46 Cal.App.5th 436, 444–445; accord *Armendariz v. Foundation Health Psychcare Services, Inc.* (2000) 24 Cal.4th 83, 97–98.)  "Unconscionability in a contract is one reason a court may decline enforcement." (*Lange, supra*, at p. 445.)

8

"A contract is unconscionable if one of the parties lacked a meaningful choice in deciding whether to agree and the contract contains terms that are unreasonably favorable to the other party. [Citation.] Under this standard, the unconscionability doctrine ' "has both a procedural and a substantive element." ' [Citation.] 'The procedural element addresses the circumstances of contract negotiation and formation, focusing on oppression or surprise due to unequal bargaining power. [Citations.] Substantive unconscionability pertains to the fairness of an agreement's actual terms and to assessments of whether they are overly harsh or one-sided.' [Citation.]" (*OTO, L.L.C. v. Kho* (2019) 8 Cal.5th 111, 125 (*OTO*), final bracketed insertion added.)

"Both procedural and substantive unconscionability must be shown for the defense to be established, but 'they need not be present in the same degree.' [Citation.] Instead, they are evaluated on ' "a sliding scale." ' [Citation.] '[T]he more substantively oppressive the contract term, the less evidence of procedural unconscionability is required to' conclude that the term is unenforceable. [Citation.] Conversely, the more deceptive or coercive the bargaining tactics employed, the less substantive unfairness is required." (*OTO*, *supra*, 8 Cal.5th at pp. 125–126.)

"The burden of proving unconscionability rests upon the party asserting it." (*OTO*, *supra*, 8 Cal.5th at p. 126.) "Whether an agreement is unconscionable presents a question of law which we review de novo." (*Williams v. Atria Las Posas* (2018) 24 Cal.App.5th 1048, 1055.) " '[T]o the extent,' " however, " 'the trial court's determination that the arbitration agreement was unconscionable turned on the resolution of conflicts in the evidence or on factual inferences to be drawn from the evidence, we consider the evidence in the light most favorable to the trial

9

court's ruling and review the trial court's factual determinations under the substantial evidence standard.' [Citation.]" (*Ibid.*)

### 2. Analysis

Much of the trial court's written order focused on the procedural unconscionability of the retainer agreement, that is, " 'the circumstances of contract negotiation and formation, focusing on oppression or surprise due to unequal bargaining power.' " (*OTO*, *supra*, 8 Cal.5th at p. 125.) The court found that S&J, as attorneys, were in a superior bargaining position, that Weischadle was "in a vulnerable state" due to her injuries and need to find an attorney to take over her existing case, and that S&J failed to inform Weischadle of the choice between commercial and consumer arbitration and that the former would be significantly more costly for her than the latter.

The problem with the trial court's findings is there was virtually no evidence to support them. Weischadle, who had the burden to prove unconscionability, submitted no evidence regarding the circumstances in which she entered into the retainer agreement. She filed no declarations—indeed, the trial court forbade her from doing so in support of her supplemental brief on unconscionability—and the record does not indicate she testified before the trial court. The declaration submitted by S&J noted only that the parties had executed the agreement and that Weischadle had initialed each page and signed the agreement, but said nothing else about negotiation or formation of the agreement.

In the absence of evidence of the circumstances of negotiation and formation of the retainer agreement, the trial court appears to have relied on the content of the agreement itself, noting that the agreement did not explain what commercial arbitration was, who would be responsible for paying for it, and

10

what the cost would be. Assuming arguendo the lack of this information would support a finding of procedural unconscionability, there was no evidence from which the trial court could conclude that S&J did not provide this information some other way; in fact, the agreement expressly stated that "Client acknowledges that he/she has been fully advised of all of the possible consequences of arbitration," which at least raises the possibility that S&J provided advisements not contained in the agreement itself.

Also unknown is to what extent Weischadle negotiated the terms of the agreement with S&J, and whether she was in fact in a "vulnerable state," as the trial court presumed, or was instead in control of her selection of attorneys and the terms of their retention. It is possible, for example, that Weischadle chose S&J out of a number of law firms she considered.

When S&J noted the lack of supporting evidence at the hearing on the motion to compel arbitration, the trial court stated that S&J "was given every opportunity to present whatever evidence it wanted." This was both a legal and factual error. It was Weischadle's burden, not S&J's, to substantiate a claim of unconscionability. As discussed, Weischadle submitted no evidence in support of this claim, and thus S&J had no obligation to present contrary evidence.

Even if it were S&J's burden, S&J had no opportunity to meet it. Weischadle did not raise the issue of unconscionability in her opposition to the motion to compel arbitration, and therefore S&J had no reason to provide evidence on that issue at the January 14, 2020 hearing. The trial court focused on the inadequacy of the Jones declaration, but that declaration was never intended to address the issue of unconscionability, an issue that did not arise until after the declaration was filed. When unconscionability was raised for the first time at the January 14

11

hearing, the trial court ordered supplemental briefing but prohibited submission of any evidence. S&J was never able to submit evidence specific to the issue of unconscionability.

We acknowledge there is no transcript of the January 14 hearing in the record. We further acknowledge that " ' " '[a] judgment or order of the lower court is *presumed correct*. All intendments and presumptions are indulged to support it on matters as to which the record is silent, and error must be affirmatively shown.' " ' " (*People v. Torres* (2020) 47 Cal.App.5th 984, 989 (*Torres*).) Thus, had the trial court received evidence at the January 14 hearing, in the absence of a transcript arguably we would be compelled to presume that evidence supported the trial court's ruling.

We do not perceive the record as silent, however, as to what occurred at the January 14 hearing. It is evident to us that the trial court did not receive evidence at the hearing, or that S&J made a concession that obviated the need for further evidence. As discussed, Weischadle did not raise the issue of unconscionability in her opposition to the motion to compel arbitration, and therefore the issue did not arise until the January 14 hearing. The minute order from the January 14 hearing did not refer to any testimony or submission of evidence. We may infer from the minute order that no such testimony or evidence was received. (See *Copley Press, Inc. v. Superior Court* (1992) 6 Cal.App.4th 106, 113 [official court minutes "accurately and officially reflect[ ] the work of the court"].)

The reporter's transcript from the February 4 hearing, as well as the trial court's detailed five-page written order, indicate the court's ruling was not based on anything that occurred at the January 14 hearing. In the transcript and written order, the trial court never referred to any evidence other than the retainer agreement itself and the declaration S&J filed in support of its

12

motion to compel arbitration, a declaration submitted before the issue of unconscionability arose. Particularly given S&J's express protest at the February hearing that S&J had not been allowed to present evidence, we would expect the trial court to have cited to evidence presented or concessions made at the January 14 hearing to dispute S&J's claim had such evidence or concessions existed.

In short, every indication in the record is that nothing occurred at the January 14 hearing to support the trial court's ruling. The record therefore is not " ' " 'silent' " ' " as to what transpired at the hearing, even in the absence of a transcript, and we need not make " ' " '[a]ll intendments and presumptions' " ' " in favor of the trial court's ruling. (*Torres*, *supra*, 47 Cal.App.5th at p. 989.)

Having concluded there was no evidence to support the trial court's finding of procedural unconscionability, we need not address its findings regarding substantive unconscionability. (*OTO*, *supra*, 8 Cal.5th at p. 125 ["Both procedural and substantive unconscionability must be shown for the defense to be established . . . ."].)

### B. S&J Did Not Waive Arbitration

S&J contends the trial court erred in concluding S&J had waived arbitration. We agree.

### 1. Applicable law

A court may decline to grant a petition to compel arbitration upon a finding that "[t]he right to compel arbitration has been waived by the petitioner." (§ 1281.2, subd. (a).) "[W]aivers are not to be lightly inferred and the party seeking to establish a waiver bears a heavy burden of proof." (*St. Agnes Medical Center v. PacifiCare of California* (2003) 31 Cal.4th 1187, 1195 (*St. Agnes*).)

"Both state and federal law emphasize that no single test delineates the nature of the conduct that will constitute a waiver of arbitration.  [Citations.]  ' "In the past, California courts have found a waiver of the right to demand arbitration in a variety of contexts, ranging from situations in which the party seeking to compel arbitration has previously taken steps inconsistent with an intent to invoke arbitration [citations] to instances in which the petitioning party has unreasonably delayed in undertaking the procedure.  [Citations.]  The decisions likewise hold that the 'bad faith' or 'wilful misconduct' of a party may constitute a waiver and thus justify a refusal to compel arbitration. [Citations.]" '  [Citation.]" (*St. Agnes*, *supra*, 31 Cal.4th at pp. 1195–1196, first & last bracketed insertion added.)

Our Supreme Court has listed the following factors as relevant when assessing claims of waiver:  " ' "(1) whether the party's actions are inconsistent with the right to arbitrate; (2) whether 'the litigation machinery has been substantially invoked' and the parties 'were well into preparation of a lawsuit' before the party notified the opposing party of an intent to arbitrate; (3) whether a party either requested arbitration enforcement close to the trial date or delayed for a long period before seeking a stay; (4) whether a defendant seeking arbitration filed a counterclaim without asking for a stay of the proceedings; (5) 'whether important intervening steps [e.g., taking advantage of judicial discovery procedures not available in arbitration] had taken place'; and (6) whether the delay 'affected, misled, or prejudiced' the opposing party." '  [Citation.]" (*St. Agnes*, *supra*, 31 Cal.4th at p. 1196.)

"Generally, the determination of waiver is a question of fact, and the trial court's finding, if supported by sufficient evidence, is binding on the appellate court.  [Citations.]  'When, however, the facts are undisputed and only one inference may

14

reasonably be drawn, the issue is one of law and the reviewing court is not bound by the trial court's ruling.' [Citation.]" (*St. Agnes*, *supra*, 31 Cal.4th at p. 1196.)

## 2. Analysis

The trial court ruled that S&J waived arbitration by invoking an automatic extension under section 430.41 to file a demurrer, then using that extension to file a motion to compel arbitration instead.[2] As the trial court explained at the February 4 hearing, it viewed S&J as obtaining "an extension of time under false pretenses," and that S&J "misuse[d]" the statutory extension.

Assuming arguendo that invoking a section 430.41 extension under false pretenses constitutes a waiver of arbitration, an issue we do not decide, there is no evidence in the record to support a finding that S&J, at the time it filed its declaration in support of the automatic extension, had no intention of filing a demurrer. That was speculation on the part of the trial court. Further, we are aware of no authority that a party who seeks a 30-day extension to file a demurrer becomes obligated thereby actually to file a demurrer—parties commonly switch tactics as litigation proceeds, and it would be a waste of time to require a party to file a particular responsive pleading it no longer deems necessary simply because the party earlier declared an intent to file that pleading.

---

[2] Section 430.41 grants a "demurring party" an automatic 30-day extension to file a responsive pleading if the parties are unable to meet and confer at least five days before the date the responsive pleading is due. (§ 430.41, subd. (a)(2).) S&J also invoked section 435.5, which provides a similar extension to a party seeking to file a motion to strike. (§ 435.5, subd. (a)(2).)

15

Although substantial invocation of litigation machinery or use of litigation procedures not available in arbitration may result in waiver (*St. Agnes*, *supra*, 31 Cal.4th at p. 1196), S&J's use of an automatic extension intended for litigants filing demurrers is not substantial invocation of litigation machinery or procedures.  Participation in litigation does not in itself result in waiver, absent a determination on the merits of arbitrable issues or prejudice to another party.  (*Id.* at p. 1203.)  Thus, "[a]nswering a complaint does not result in waiver," nor does filing a demurrer if it is withdrawn prior to a determination on the merits. (*Khalatian v. Prime Time Shuttle, Inc.* (2015) 237 Cal.App.4th 651, 662.)  If filing a demurrer is insufficient to waive arbitration, then the preliminary step of obtaining an extension to file a demurrer also cannot constitute waiver.

None of the other *St. Agnes* factors applies.  S&J moved to compel arbitration nearly at the outset of the lawsuit, before responding to the complaint.  Thus, very little litigation or preparation had taken place, the suit was not close to trial, S&J filed no counterclaims, and S&J had not taken important intervening steps such as seeking judicial discovery.  (See *St. Agnes*, *supra*, 31 Cal.4th at p. 1196.)  Most significantly, Weischadle offered no evidence that she was " ' " 'affected, misled, or prejudiced' " ' " by the brief delay between service of the complaint and the motion to compel arbitration.  (*Ibid.*)  To the extent S&J's conduct led her to expect a demurrer that never came, we cannot conceive how that prejudiced her.

## C.    There Is No Other Basis To Affirm the Trial Court's Order

Section 1281.2 requires the trial court to order the parties "to arbitrate the controversy if it determines that an agreement to arbitrate the controversy exists," unless one of four exceptions

16

applies. The trial court's order relied on two of those exceptions, waiver and grounds for rescission (namely, unconscionability) (§ 1281.2, subds. (a)–(b)), and we have explained *ante* why those exceptions do not apply.[3] The other exceptions also do not apply: there are no separate pending proceedings with third parties arising from the same transaction, and S&J is not "a state or federally chartered depository institution." (§ 1281.2, subds. (c)–(d).)

It is undisputed that "an agreement to arbitrate the controversy exists." (§ 1281.2.) Weischadle and S&J executed the retainer agreement containing the arbitration clause, which encompasses "[a]ny dispute arising under this Contract or in connection with Attorney's services hereunder, including any claim by Client against Attorney for malpractice or other tort claims." Weischadle's complaint targets the services S&J provided, thus bringing it within the ambit of the arbitration clause. Accordingly, the trial court should have ordered the parties to arbitration.

---

[3] In her papers below, Weischadle contended that S&J's purported breach of the retainer agreement rendered the arbitration provision unenforceable. We reject this argument. "The mere fact of a contractual breach in no way impairs the continuing efficacy of the arbitration provision: the very purpose of arbitration is to resolve the controversy created by the alleged breach." (*Thorup v. Dean Witter Reynolds, Inc.* (1986) 180 Cal.App.3d 228, 237.)

17

## DISPOSITION

The trial court's order is reversed.  The trial court is directed to grant appellants' motion to compel arbitration and stay further proceedings.  Appellants are awarded costs on appeal.

NOT TO BE PUBLISHED.


BENDIX, Acting P. J.


I concur:



FEDERMAN, J.*

---

* Judge of the San Luis Obispo County Superior Court, assigned by the Chief Justice pursuant to article VI, section 6 of the California Constitution.

**CHANEY, J., Dissenting.**

I respectfully dissent.

"If an appellant intends to raise any issue that requires consideration of the oral proceedings in the superior court, the record on appeal must include a record of these oral proceedings in the form of one of the following:  [¶] (1) A reporter's transcript under rule 8.130; [¶] (2) An agreed statement under rule 8.134; or [¶] (3) A settled statement under rule 8.137."  (Cal. Rules of Court, rule 8.120(b); *Southern California Gas Co. v. Flannery* (2016) 5 Cal.App.5th 476, 483.)  "A reporter's transcript [or settled statement] may not be necessary if the appeal involves legal issues requiring de novo review.  [Citation.]  In many cases involving the substantial evidence or abuse of discretion standard of review, however, a reporter's transcript or an agreed or settled statement of the proceedings will be indispens[a]ble."  (*Flannery*, at p. 483.)

The necessity for a record of oral proceedings rests on the bedrock principle that the trial court's orders are presumed to be correct—the "Presumption of Correctness."  (Eisenberg et al., Cal. Practice Guide:  Civil Appeals and Writs (The Rutter Group 2020) ¶ 8:17.)  A leading practice guide on appellate law identifies this presumption as "[t]he *most fundamental rule of appellate review*."  (*Id.* at ¶ 8:15, italics added.)  " 'All intendments and presumptions are indulged to support [the appealed judgment or order] on matters as to which the record is silent, and error must be affirmatively shown.' [Citations.]  This includes the presumption 'that the record contains evidence to support every finding of fact.'  [¶]  Appellate courts *never speculate* that trial court error occurred.  Any ambiguity in the

record is resolved *in favor* of the appealed judgment or order." (*Id.* at ¶¶ 8:15, 8:16, original italics.)

" 'A necessary corollary to this rule [is] that a record is inadequate, and appellant defaults, if the appellant predicates error only on the part of the record he provides the trial court, but ignores or does not present to the appellate court portions of the proceedings below which *may* provide grounds upon which the decision of the trial court *could be affirmed.*' " (*Osgood v. Landon* (2005) 127 Cal.App.4th 425, 435, italics added.) The "appellant's burden to affirmatively demonstrate error remains the same whether or not respondent files a brief." (Eisenberg et al., Cal. Practice Guide: Civil Appeals and Writs, *supra*, ¶ 8:17.3.)

Our jurisprudence is bursting at the seams with cases applying these rules to affirm what *may* be otherwise reversible trial court orders and judgments. In *Gee v. American Realty & Construction, Inc.* (2002) 99 Cal.App.4th 1412, for example, the court affirmed a trial court's order denying a motion in the trial court. The appellant failed to provide a reporter's transcript (or other acceptable record of the oral proceedings) of the hearing at which the motion was denied; the Court of Appeal concluded that it was "conceivable" that something had happened at that hearing that would support the trial court's order. "So long as such *possible* grounds *may* exist for the trial court to have denied [appellant's] motion in the exercise of its discretion, [appellants] have not sustained their burden as appellants to demonstrate error, thus overcoming the presumption of correctness attending the order denying their motion." (*Id.* at p. 1416, italics added; see also, e.g., *Foust v. San Jose Construction Co., Inc.* (2011) 198 Cal.App.4th 181, 186 [cataloguing cases]; *Aguilar v. Avis*

*Rent A Car System, Inc.* (1999) 21 Cal.4th 121, 132 [where appellants failed to provide a reporter's transcript they could not challenge the sufficiency of the evidence to support a trial court finding]; *Ballard v. Uribe* (1986) 41 Cal.3d 564, 574 [failure to include a transcript or settled statement precluded review of denial of motion for new trial and other issues on appeal]; *Cosenza v. Kramer* (1984) 152 Cal.App.3d 1100, 1102 ["evidence is conclusively presumed to support the judgment"]; *Vo v. Las Virgenes Municipal Water Dist.* (2000) 79 Cal.App.4th 440, 447 [affirming order fixing amount of attorney fees based on appellant's failure to provide an adequate record]; *Jameson v. Desta* (2018) 5 Cal.5th 594, 608 [cataloguing cases; "absence of a court reporter at trial court proceedings and the resulting lack of a verbatim record of such proceedings will frequently be fatal to a litigant's ability to have his or her claims of trial court error resolved on the merits by an appellate court"]; *Rossiter v. Benoit* (1979) 88 Cal.App.3d 706, 712 [demurrers]; *Maria P. v. Riles* (1987) 43 Cal.3d. 1281, 1295 [attorney fee award].)

The appellants in this matter requested a substantial evidence review of a trial court's order denying a motion to compel arbitration. The trial court heard that motion at two hearings. The first hearing was on January 14, 2020, and no court reporter was present. The second hearing, on February 4, 2020, was reported. The appellants provided us with a reporter's transcript of the second hearing, but designated no record of the oral proceedings on January 14, 2020 in *any* form.

The review of this case should have ended with appellants' failure to designate a complete record of the oral proceedings at which their motion to compel arbitration was considered.

We cannot know what happened at the hearing on January 14, 2020. Consequently, *we must presume* that *something* happened that would justify the trial court's denial of the motion to compel arbitration. Litigants frequently concede points in response to bench officers' questions or make representations or assertions of fact *upon which trial courts must be allowed to rely*. The standard of review that the appellants invoked and the presumptions that *bind* us command us to *presume* something happened at the January 14, 2020 hearing that supported the trial court's order; nothing in the record before us demonstrates otherwise.

That the hearing was not reported is of no consequence. The rules of court allow appellants the alternatives of an agreed statement or a settled statement when they must provide the Court of Appeal with a record of oral proceedings and no reporter's transcript exists. (Cal. Rules of Court, rule 8.120(b).)

The absence of *any* record of an oral proceeding, however, is glaring. The parties' oral argument in this case demonstrates why.

At argument, the appellants told us in their principal argument that unconscionability—the principal issue on appeal— was not discussed at the January 14, 2020 hearing. "The issue of unconscionability never came up" at the January 14 hearing, counsel informed us. In her argument, respondent informed us that the issue *was* discussed at the January 14 hearing: "Unconscionability was raised and talked about; it was a long discussion." Indeed, the respondent told us that "the denial [of] the motion [to compel arbitration] was based [on] the discussion during the [January] hearing." On rebuttal, and after reviewing a minute order that reflected that the issue *must have* been

4

discussed at the January 14 hearing, appellant's counsel *conceded at argument in our court* that there was discussion of unconscionability at the January 14 hearing. "The first thing I need to do [on rebuttal]," appellants' counsel told us, "is apologize to this court because [the respondent] is correct that unconscionability did come up at the January [14] hearing. I don't have a clear recollection of it . . . ."

The appellants' counsel informed us that his misstatement was an oversight. But the exchange is—in and of itself—*why the appellate courts will not presume error and will require error to be demonstrated on an adequate record*. We cannot determine—in the middle of oral argument or otherwise—whether what we think might have happened at a hearing in the trial court is what *actually* happened, and whether one party is more or less correct than the other about whether something was discussed. *This exchange demonstrates why the strict rules about the contents of the record are what they are and why we make the presumptions we make.*

To find otherwise is to create two new and impossible burdens for participants in the judicial system.

First, not presuming correctness of trial court orders and judgments—contrary to the presumption of correctness—will require trial courts to affirmatively establish the correctness of their orders, and to do so *on the face of each of their orders*. Allowing parties to challenge the sufficiency of the evidence to support an order by providing *only a partial record* means that we no longer accept the correctness of trial court orders that do not contain a statement of reasons that we can determine on their face to have included every fact and factor and legal authority considered. That the trial court's order makes no

reference to the January 14 hearing *does not foreclose* that something may have happened at that hearing that could have provided grounds upon which the decision could have been affirmed. *To be sure, the trial court's order makes no reference to the February 4 hearing, either, yet we know what happened at the February 4 hearing because we have a reporter's transcript.* The *absence* of a statement in the order or on another transcript is no more than the absence of a statement; *it is not in itself an affirmative statement* that *nothing happened at the January 14 hearing.*

The other impossible burden it creates is that it affirmatively *shifts* the burden to a *respondent* to demonstrate the *correctness* of the trial court's action on a sufficiency of the evidence review—the review appellants invoked here.

Together, these new burdens represent a sea change; they upend the presumption of correctness. They also put the trial court in the position of being an advocate at hearings—requiring trial judges to argue on the record in favor of the position adopted in a tentative ruling, just in case the appellant fails (or declines) to designate a complete record on appeal. And they create the strange incentive for attorneys to be careless or sloppy in their practice both in the trial courts and here to allow the Court of Appeal to fill in the gaps a missing or partial record creates with whatever information suits how it views the rest of the information it has.

Finally, procedural rules applied consistently are part of the foundation of due process. The rules that govern our review—like other rules of procedure, standards of review, and presumptions parties are entitled to—are intended in part to give litigants equal access to the judicial process. Courts tip the

6

scales when they decline to consistently apply those procedural prescriptions.

Because the appellants failed to procure a record of oral proceedings from both hearings on their motion to compel arbitration, we are not in a position to review the trial court's order on anything other than a de novo basis—review that the appellants did not ask for and that their arguments do not invoke.  The record is insufficient to support any other review, including the substantial evidence review the appellants request. On that basis, I would affirm.


CHANEY, J.